## MIMA QUEEN AND CHILD,

### PETITIONERS FOR FREEDOM,

*v.*

### HEPBURN.

---

*Present.....All the Judges except* TODD, *J.*

Hearsay evidence is incompetent to establish any specific fact,

ERROR to the Circuit Court for the district of Columbia, sitting at Washington.

At the trial several bills of exception were taken.

1. The first was for the rejection of part of the deposition of Caleb Clarke, who deposed to a fact respecting the ancestor of the petitioners which he had heard his mother say she had frequently heard from her father.

2. The second was for overruling part of the deposition of Freeders Ryland, which stated what he had heard Mary, the ancestor of the petitioners, say respecting her own place of birth and residence.

3. The third exception stated that after a juror was sworn the petitioners excepted to him because he was not an inhabitant of the county, but the Court overruled the exception.

4. The fourth exception stated that a talisman being challenged for favor, and having, upon being questioned, avowed his detestation of slavery to be such that, in a doubtful case, he would find a verdict for the petitioners, and that he had so expressed himself with regard to this very case, and that if the testimony were equal he should certainly find a verdict for these petitioners: the Court instructed the *tryers* that he did not stand indifferent between the parties.

5. The fifth exception was similar to the second.

6. The sixth exception stated that the petitioners, having read the deposition of R. Disney, stating that he had heard a report from divers persons respecting the manner of the importation of the ancestor of the petitioners, &c. the Court instructed the jury that if they should believe from the evidence, that the existence of the report was not stated by the deponent of his own knowledge, but from what had been communicated to him respecting the existence of such a report many years after her importation, without its appearing by whom or in what manner the same was communicated to him, then the evidence is incompetent to prove either the existence of such report, or the truth of it.

F. S. Key, *for the Plaintiffs in error.*

The principal exception is to the opinion of the Court that in tracing a pedigree, the hearsay of hearsay is

which is, in its nature, susceptible of being proved by witnesses who speak from their own knowledge. Claims to freedom in Maryland are not exempt from that general rule.

After a juror is sworn no exception can be taken to him on account of his being an inhabitant of another county. If a juror be challenged for favor, & upon examination before the tryers, he declare that if the evidence should be equal he should give a verdict in favor of that party upon whom the burden of proof lies, the Court in the exercise of a sound discretion ought to reject him, although the bias should not be so strong as to render it positively improper to allow him to be sworn

MIMA not admissible.  Caleb Clarke's deposition, as to what
QUEEN & he heard his mother say, was admitted, but, as to what
CHILD he heard his mother say her father said, was rejected.
*v.* If this opinion be correct it will be impossible to prove
HEPBURN. any antient fact.

JOHN LAW, *contra.*

Hearsay is only admissible on the ground of necessity and antiquity.  1 *Wash* 123.   2 *Wash.* 148.   There was no evidence of the death of the person whose declarations were given in evidence.  Hearsay of hearsay is analogous to a copy of a copy.  The witness ought at least to state from whom he heard the report.

JONES, *on the same side.*

Every claim to freedom ought to be supported by the same kind of evidence as is necessary to support other claims.  There is no rule of law that exempts it from the general principles of evidence.  In the present case the *hearsay* was not introduced to prove *pedigree* nor *prescription,* nor *custom;* but to prove that a certain ancestor came from England.  It was the neglect of the parties that they did not urge their claim while they had legal evidence to support it.  5 *T. R* 121.  *Ostram v. Morewood.*  Although a *general right* may be proved by traditionary evidence, a particular fact cannot, except in tracing a pedigree.  The admission of hearsay is an exception to the general rule of evidence, and therefore must be confined strictly to the excepted cases, which are *prescription, custom* and *pedigree; cases* in which the strength of the claim depends upon its antiquity.  He who would use hearsay as evidence must first prove all the facts which would entitle him to use it, and must satisfy the Court that better evidence cannot be had.  The hearsay must be of such a fact as, if the person were living, could be given in evidence by him.  Hearsay evidence of a general reputation of a fact is not admissible.  The witness himself must know the fact of general reputation.

There are two objections to Disney's deposition: 1. That he does not state who informed him, so that it may be known whether that person be living or not so

as himself to be a witness; and, 2. That a general reputation of a fact is not evidence.

MORSELL, *in reply.*

The general rule of evidence is, that if the evidence offered be the best which the nature of the case admits, and leaves no presumption that there is better behind, it is admissible.

Such evidence as this is always admitted in the Courts of Maryland, under whose laws this case was tried, and its use had been sanctioned by the authority of the highest Court of that state. The case cited by the opposite counsel shows that it is admitted not only in cases of prescription, custom and pedigree, *but in all cases of the like nature.* So it has been received in *settlement cases,* in all cases of *paupers,* and in questions of *antient boundaries* in ejectment. The evidence taken upon commissions to *mark and bound* lands, under the statute of Maryland, generally consists of testimony of this kind. 1 *Harris and M'Henry's Reports,* 84, 85. After a lapse of 100 years better evidence than this cannot be expected. The general reputation of the fact that the ancestor was free is sufficient to rebut the presumption arising from *color,* and throws the burden of proof on the other side.

As to the admission of hearsay, he cited *Peake's ev.* 10 *to* 13, *id. Appendix, p.* 18.

*February 18th....*MARSHALL, *Ch. J.* delivered the opinion of the Court as follows:

This was a suit instituted by the Plaintiffs in the Circuit Court of the United States for the County of Washington, in which they claim freedom. On the trial of the issue certain depositions were offered by the Plaintiffs, which were rejected by the Court and exceptions were taken. The verdict and judgment being rendered for the Defendants, the Plaintiffs have brought the cause into this Court by writ of error, and the case depends on the correctness of the several opinions given by the Circuit Court.

MIMA QUEEN & CHILD *v.* HEPBURN.

The first opinion of the Court to which exception was taken was for the rejection of part of the deposition of Caleb Clarke, who deposed *to a fact* which he had heard his mother say she had frequently heard from her father.

The second exception is to the opinion overruling part of the deposition of Freeders Ryland, which stated what he had heard Mary, the ancestor of the Plaintiffs, say respecting her own place of birth and residence.

The fifth exception is substantially the same with the second. The question is somewhat varied in form, and the testimony given by the Defendant to which no exception was taken is recited, and the hearsay evidence is then offered as historical; but the Court perceives no difference in law between the second and fifth exceptions.

The sixth exception is taken to an instruction given by the Court to the jury on the motion of the counsel for the Defendants. The Plaintiffs had read the deposition of Richard Disney, who deposed that he had heard a great deal of talk about Mary Queen, the ancestor of the Plaintiffs, and has heard divers persons say that Captain Larkin brought her into this country, and that she had a great many fine clothes, and that old William Chapman took her on shore once, and that no body would buy her for some time, until at last James Caroll bought her.

Whereupon the Defendant's counsel moved the Court to instruct the jury that if they find the existence of this report and noise was not stated by the witness from his knowledge, but from what had been communicated to him respecting the existence of such a report and noise many years after her importation, without its appearing *by whom or in what manner* the same was communicated to him, then the evidence is incompetent to prove either the existence of such report and noise or the truth of it: which instruction the Court gave.

The Plaintiffs also read the deposition of Thomas Warfield, who deposed that John Jiams, an inspector of tobacco, told him that Mary the ancestor of the Plain-

tiffs was free and was brought into this country by
Captain Larkin, and was sold for seven years. The
Court instructed the jury that if they should be satisfi-
ed upon the evidence that these declarations of John
Jiams were not derived from his own knowledge, but
were founded on hearsay or report communicated to
him many years after the importation and sale of the
said Mary, without its appearing by whom or in what
manner such communication was made to him: then his
said declarations are not competent evidence in this
cause. To these instructions the counsel for the Plain-
tiffs excepted.

These several opinions of the Court depend on one
general principle. The decision of which determines
them all. It is this: *That hearsay evidence is incompe-*
tent to establish any *specific* fact, which fact is in its na-
ture susceptable of being proved by witnesses who
speak from their own knowledge.

However the feelings of the individual may be inte-
rested on the part of a person claiming freedom, the
Court cannot perceive any legal distinction between the
assertion of this and of any other right, which will
justify the application of a rule of evidence to cases of
this description which would be inapplicable to general
cases in which a right to property may be asserted.
The rule then which the Court shall establish in this
cause will not, in its application, be confined to cases of
this particular description, but will be extended to
others where rights may depend on facts which happen-
ed many years past.

It was very justly observed by a great judge that
" all questions upon the rules of evidence are of vast
importance to all orders and degrees of men: our lives.
our liberty, and our property are all concerned in the
support of these rules, which have been matured by the
wisdom of ages, and are now revered from their anti-
quity and the good sense in which they are founded."

One of these rules is, that " hearsay" evidence is in
its own nature inadmissible. That this species of testi-
mony supposes some better testimony which might be
adduced in the particular case, is not the sole ground

MIMA
QUEEN &
CHILD
*v.*
HEPBURN.

MIMA
QUEEN &
CHILD
v
HEPBURN

of its exclusion. Its intrinsic weakness, its incompetency to satisfy the mind of the existence of the fact, and the frauds which might be practiced under its cover, combine to support the rule that hearsay evidence is totally inadmissible.

To this rule there are some exceptions which are said to be as old as the rule itself. These are cases of *pedigree*, of *prescription*, of *custom*, and in some cases of *boundary*. There are also matters of general and public history which may be received without that full proof which is necessary for the establishment of a private fact.

It will be necessary only to examine the principles on which these exceptions are founded to satisfy the judgment that the same principles will not justify the admission of hearsay evidence to prove a *specific fact*, because the eye witnesses to that fact are dead. But if other cases standing on similar principles should arise, it may well be doubted whether justice and the general policy of the law would warrant the creation of new exceptions. The danger of admitting hearsay evidence is sufficient to admonish Courts of justice against lightly yielding to the introduction of fresh exceptions to an old and well established rule: the value of which is felt and acknowledged by all.

If the circumstance that the eye witnesses of any fact be dead should justify the introduction of testimony to establish that fact from hearsay, no man could feel safe in any property, a claim to which might be supported by proof so easily obtained.

This subject was very ably discussed in the case of *the king against the inhabitants of Eriswell*, where the question related to the fact that a pauper had gained a residence, a fact which it was contended might be proved by hearsay evidence. In that case the Court was divided, but it was afterwards determined that the evidence was inadmissible.

This Court is of the same opinion.

The general rule comprehends the case, and the case is not within any exception heretofore recognized.

This Court is not inclined to extend the exceptions further than they have already been carried.

<div style="float:right">MIMA QUEEN & CHILD v. HEPBURN.</div>

There are other exceptions taken which appear on the record, but were not much relied upon in argument.

The third exception is to the qualification of one of the jurors. He was called as a talisman, and was stated to be an inhabitant of the county of Alexandria—not of Washington. The Court decided that he was a proper juryman, and he was sworn. After his being sworn the objection was made by the Plaintiff's counsel, and an exception was taken to the opinion of the Court.

Whatever might have been the weight of this exception if taken in time, the Court cannot sustain it now. The exception ought to have been made before the juror was sworn.

The fourth exception also applies to an opinion given by the Circuit Court respecting the service of one of the persons summoned as a juror. James Reed, when called, was questioned, and appeared to have formed and expressed no opinion on the particular case; but on being further questioned, he avowed his detestation of slavery to be such that in a doubtful case he would find a verdict for the Plaintiffs; and that he had so expressed himself with regard to this very cause. He added that if the testimony were equal he should certainly find a verdict for the Plaintiffs. The Court then instructed the tryers that he did not stand indifferent between the parties. To this instruction an exception was taken.

It is certainly much to be desired that jurors should enter upon their duties with minds entirely free from every prejudice. Perhaps on general and public questions it is scarcely possible to avoid receiving some prepossessions, and where a private right depends on such a question the difficulty of obtaining jurors whose minds are entirely uninfluenced by opinions previously formed is undoubtedly considerable. Yet they ought to be superior to every exception, they ought to stand perfectly indifferent between the parties, and although the bias which was acknowledged in this case might not

MIMA      perhaps have been so strong as to render it positively
QUEEN &   improper to allow the juror to be sworn on the jury,
CHILD     yet it was desirable to submit the case to those who felt
*v.*      no bias either way; and therefore the Court exercised
HEPBURN.  a sound discretion in not permitting him to be sworn.

There is no error in the proceedings of the Circuit Court, and the judgment is affirmed.

DUVALL, *J.*

The principal point in this case is upon the admissibility of hearsay evidence. The Court below admitted hearsay evidence to prove the freedom of the ancestor from whom the petitioners claim, but refused to admit hearsay of hearsay. This Court has decided that hearsay evidence is not admissible to prove that the ancestor from whom they claim was free. From this opinion I dissent.

In Maryland the law has been for many years settled that on a petition for freedom where the petitioner claims from an ancestor who has been dead for a great length of time, the issue may be proved by hearsay evidence, if the fact is of such antiquity that living testimony cannot be procured. Such was the opinion of the judges of the general Court of Maryland, and their decision was affirmed by the unanimous opinion of the judges of the High Court of Appeals in the last resort, after full argument by the ablest counsel at the bar. I think the decision was correct. Hearsay evidence was admitted upon the same principle, upon which it is admitted to prove a custom, pedigree and the boundaries of land;—because from the antiquity of the transactions to which these subjects may have reference, it is impossible to produce living testimony. To exclude hearsay in such cases, would leave the party interested without remedy. It was decided also that the issue could not be prejudiced by the neglect or omission of the ancestor. If the ancestor neglected to claim her right, the issue could not be bound by length of time, it being a natural inherent right. It appears to me that the reason for admitting hearsay evidence upon a question of freedom is much stronger than in cases of pedigree or in controversies relative to the boundaries of land. It will be

universally admitted that the right to freedom is more important than the right of property.

And people of color from their helpless condition under the uncontrolled authority of a master, are entitled to all reasonable protection. A decision that hearsay evidence in such cases shall not be admitted, cuts up by the roots all claims of the kind, and puts a final end to them, unless the claim should arise from a fact of recent date, and such a case will seldom, perhaps never, occur.