## GLOVER *versus* MILLINGS.

1. Where the depositions of witnesses, taken under the authority of a commission, directed abroad, appeared to have been sworn to *before* the commissioners; held, that this was sufficient, to authorise the presumption, that the witnesses had been sworn in a legal manner, and by an officer authorised by law to administer an oath.

2. In such case, held not essential for it to appear, that the package containing the depositions, had been deposited in the post-office, by the commissioners: such will be presumed to be the fact.

3. The 11th and 13th sections of the act of 1807, " concerning witnesses,"[a] contain distinct and independent provisions, for taking testimony, (in the different modes prescribed,) and a party seeking such testimony, is at liberty to select either course.

4. It need not be shewn, in the record of the testimony taken under a commission, that the commissioners adjourned from day to day, during the time in which the commission authorised the duty to be discharged.

5. The long established rule of evidence, that *hearsay is not admissible*, will not admit of an exception, in cases where a party applies for his freedom; and where he seeks to establish a fact which living witnesses *may* attest, which fact is not one of the known exceptions of pedigree, prescription, &c.

6. If a motion be made to a court in such indefinite terms, as not, by reasonable certainty, to point out the matter objected to, it is not error to overrule it, though such matter, if properly presented, might have been available.

Error from Tuskaloosa Circuit Court.

Charles Millings, a negro, filed a petition, agreeably to the statute, against William Y. Glover, alleging that he was a free man, and unjustly and illegally held in bondage by said Glover; and for which he prayed the interference of the Court. On an issue joined to try the fact, a trial was had, and a verdict rendered in favor of the petitioner : and on a bill of exceptions, the cause came up to this Court.

*Bill of Exceptions.*—" Be it remembered, that on the trial of this issue, before the jury, the petitioner

---

[a] See Aikin's Dig. 126, § 1, 3.

offered to read in evidence, certain depositions, very
material for him; and it appeared to the Court, that
they were depositions which purported to have been
taken in the State of Vermont, of witnesses residing
there : that they were enveloped in a cover of paper,
which was sealed up, and directed on the face, to
'John M. Jenkins, esquire, clerk of the Circuit court
of Tuskaloosa county, Alabama, care of G. Aikin,
esquire, Tuskaloosa, Alabama.' There appeared al-
so on the face of the packet, these words or letters, in
written characters, viz. ' Windsor, Vt. Aug. 14—1 1-2
oz.—paid $1 50.' There appeared nothing on the
seal side, but two seals of wax. It appeared further,
that this packet had been, by the clerk of this court,
taken from the post-office in Tuskaloosa, and filed in
court by him.

" It was objected by the defendant, that the said
packet did not show of itself, sufficient evidence of
verity, and in the absence of other proof, could not be
read, particularly as there were interlineations in the
depositions. But the court determined, the said
depositions should be received, because they appear-
ed fair, although interlined, and because the interline-
ations and direction, appeared from comparison of
hands, to be the same as the body of the evidence,
taken by the commissioners.

" The petitioner then offered to read the contents
of the said depositions to the jury ; which was ob-
jected to by the defendant, on the ground, that the
said depositions did not appear to have been sworn
to by the witnesses, before and by a public officer au-
thorised by law to administer an oath, but they ap-
peared only to have been sworn to before the commis-
sioners; to whom the commission was directed; which

objection was by the court overruled. The defendant further objected to the reading of the depositions—that they had been taken without the filing of any written interrogatories in the clerk's office, but were taken as running depositions without cross interrogatories : but the court overruled the objection, on the ground, that although the witnesses were non-residents, they might be so taken.

" The defendant further objected to the reading of said depositions—that they were not taken pursuant to the commission, in this, viz : that by the commission, the commissioners were required to take said depositions 'on the tenth day of August, to continue from day to day for three successive days, unless the object should be sooner accomplished.' And it did appear that the depositions of the witnesses were written on separate sheets of paper, (though attached together,) and each one certified separately with a separate certificate—some taken on the tenth, some on the eleventh, and some on the twelfth of August, and it did not appear that the examination had been commenced on the tenth, and continued from day to day; and that the same was necessary: but the court overruled the said objections, and suffered the said evidence to be read.

" The defendant then moved the Court to exclude from the jury, a certain part of the evidence in the said depositions contained, and which was as follows: it was material for the petitioner to prove, that he was, and had been in the northern army, and had gone there ; the proof whereof by the witnesses, was in the following words: by one witness—'said Charles lived in Windsor, until, according to the best of my recollection, about the commencement of the late war

with Great Britain, when, as the deponent understood, by general report only, said Charles became in some way attached to the army.' And by another witness —' said Charles lived in Windsor, with his parents, from his boyhood, until at or not far from the commencement of the late war with Great Britain, at which period, as deponent has understood by general remark, said Charles, in some way, became attached to the army ;' which motion, was by the court overruled, and said evidence was submitted to the jury.

"The petitioner then offered to read to the jury, from a book, purporting to be the laws of the state of Vermont, what he contended, was the law of said state relating to this cause ; to which, the defendant objected that said book was not of itself evidence of what the law of Vermont was : but the objection was overruled, and the petitioner read from said book to the jury.

" A witness was then introduced by the petitioner, who swore that the petitioner had made himself known to him, as having known him, the witness, in the northern army ; that the petitioner had called to his mind things that did happen there ; that from said circumstances, and also from the appearance of the boy, (he being evidently a northern negro) his recollection of his features was such, as to enable him to say he believed him to be the boy he saw in the northern army ; that he could not say that from a view alone he would have known him to be the same boy, or did know him to be the same, but his opinion was formed from both these circumstances taken together, which so far revived his recollection of his features and appearance, as to enable him to give the opinion that he was the same. This was the only evidence of

identity, except general description ; but it was determined by the court, that the same was proper evidence, and it was received."

*Stewart* and *Hopkins*, for Plaintiff in error.
*Aikin* and *Baylor*, *contra*.

SAFFOLD, J.—This was a proceeding by petition, according to statute, by Millings, with a view to establish his freedom, against Glover, who had held him in servitude as a slave, and claimed him as such. The petitioner succeeded in obtaining a verdict in the Circuit Court, from which decision Glover appealed.

All the exceptions taken on the trial below, relate to the admission of testimony, which the defendant's counsel moved to exclude from the jury; but which was admitted as evidence, as shewn by the bill of exceptions.

The admission of the evidence, and the several parts thereof objected to by the counsel, are the causes assigned as error.

1. The bill of exceptions states, that the petitioner offered to read, in evidence, certain depositions, being material for him ; and it appeared to the court that they purported to have been taken in the state of Vermont, of witnesses residing there; that they were enveloped in a cover of paper, sealed up and directed on the face to "John M. Jenkins, Esqr. Clerk of the Circuit Court, Tuskaloosa county, Alabama, care of G. Aikin, Esqr. Tuskaloosa, Alabama." On the face of the paper was also written "Windsor, Vt., Aug. 14, 1 1-2 oz., paid 1 50." There appeared nothing on the seal side, but two seals of wax. It further appeared that the clerk had receiv-

ed the packet from the post office, Tuskaloosa, and filed it in court. This testimony was objected to by the defendant, on the ground, that the packet did not shew of itself sufficient evidence of verity; and in the absence of other proof, could not be read, particularly as there were interlineations in the depositions. But the court determined they should be received, because they appeared fair, although interlined, and because the interlineations and direction appeared, from comparison of hands, to be the same as the body of the evidence, taken by the commissioners.

In support of this objection, it is contended that it ought to have been shewn, the packet was deposited in the post office by a commissioner, or that the depositions had not been exposed to alteration before they reached there; that it was improperly directed to the care of G. Aikin, esquire; also, that the Judge was not authorised to decide the identity of the hand-writing from comparison. No authority has been cited on this point, and no doubt it is one on which the rules of practice are variant in different states. It is also conceived to be one, concerning which, each appellate court, in the absence of direct legislation, is competent, from the nature and necessity of the case, to establish a rule for its own government, and that of inferior tribunals, over which it has a superintendence and control. On this subject our statutes contain no positive direction, and if they did, we should be under the necessity of depending much on the courtesy of non-residents for a compliance with it. We must, therefore, dispense with any such rigid rules of practice, as would have a tendency to deny us the benefit of testimony from abroad.

Should we require evidence that one of the commissioners deposited the packet in the post office, it would be equally difficult to make proof of that fact; or if a certificate from the commissioner, or post-master, endorsed upon the packet, be required, the same consequences would follow, unless it be allowed that the hand-writing of the former may be proved by comparison, which would be illegal. Hence it is necessary, notwithstanding the possibility of imposition, to presume that the commissioners have done their duty, by retaining the packet in their safe custody, and depositing it in the post office at which it purports to have been mailed; and this we hope is not an unwarranted presumption. The circumstance of the depositions having been directed to the clerk, and *to the care of one of the counsel,* is unimportant ; either could account to the court for his receiving it from the post office; but it was received by the clerk himself, the proper officer. We may *therefore conclude* that the packet was, at all times, until published in court, in the possession of persons acting under the solemnity of official obligation.

That the Circuit Judge in overruling the objection, that the depositions were interlined, gave as a reason, that they appeared fair, and from comparison of hands, to be the same as the body of the depositions, is equally immaterial. The presumption was, without proof to the contrary, that the interlineations were made before the depositions were sworn to, and any other reason expressed, was entirely innocent.

2. It was farther objected to the admissibility of the same testimony, " that the depositions did not appear to have been sworn to by the witnesses, before and by a public officer authorised by law to ad-

minister an oath, but they appeared only to have been sworn to before the commissioners:" which objection was overruled.

This is the language of the bill of exceptions, and from which we are to infer the particular manner in which the depositions were sworn to. Our statute, " concerning witnesses,"[a] has given no specific directions on this point. It, however, authorises a commission to issue, in terms very similar to the certificate of the commissioner, as above recited. The commission was required to be, and is supposed to have been, directed to one or more persons, " to take and receive the deposition of such witness." The substance of this requisition is conceived to be, that the commissioner should have been present, assisting, or superintending the taking, and when written out, the deposition should have been sworn to in a legal manner, according to the laws of that state. The idea is not entirely excluded, that the witness may have been sworn before, or the oath administered by some public officer, other than the commissioner, and that being thus done in the presence also of the latter, he could and has certified that it was done before him. Had the deposition purported to have been sworn to before a particular person, as a public officer authorised to administer the oath ; or had the commissioner certified such to have been the fact, or that he himself was such officer, this would have been all that our rules of practice could have required; yet it would not have been the best evidence of either fact, or essentially different from what it is. Though an oath administered by a commissioner, without competent authority would probably be as binding *in foro conscientiæ,* as any other ; yet we think, in a community

[a] Toul. Dig 889.

subject to civil organization, and in which magistrates and others, are authorised by law to administer oaths, under the pain of perjury, it is but a safe requisition, that the oath of witnesses under a commission, should be administered by a competent officer, and that this should appear with reasonable certainty. It is not doubted that such is the condition of Vermont.

But without expressing any decisive opinion, whether this commissioner, by virtue of the commission alone, was competent to administer the oaths, as no satisfactory authority was read on this point, we feel authorised to presume, in the present state of the record, that the witnesses in question were legally sworn—either that the oaths were administered by some other competent officer, or that the commissioner himself was such.

3. A further objection was made, and overruled, that the evidence was taken, under a commission, in the form of running depositions, when it could only have been done in the manner prescribed for taking testimony by interrogatories.

The act " concerning witnesses," before referred to in the 11th section, is ordinarily explicit, with respect to *witnesses residing out of the State.* After prescribing the manner of obtaining the commission, it directs that the same may " issue to one or more persons to take and receive the deposition of such witness; which being duly taken and returned as herein-after directed shall be received as legal testimony: *Provided also*, that the party praying such commission shall give such notice to the adverse party, of the time and place, when and where such commission is to be executed, as the court, judge, justice or clerk, shall think proper ; and the adverse party shall have li-

berty to cross examine any witness whose deposition shall be so taken." It is contended, in support of this objection, that the manner of taking and returning the testimony, is not sufficiently prescribed, without having reference to the 13th section of the same act, and which, when consulted has, the effect to vary the mode of taking the testimony of non-resident witnesses from that by depositions, to interrogatories. It is perceived, however, as insisted by the petitioner's counsel, that the 12th section, which regulates the mode of taking the testimony of resident witnesses, who may be under the necessity of leaving the state, prescribes the manner of taking their depositions also ; and without giving any different, or more explicit directions, how they are to be taken or returned, concludes by declaring, that the "deposition when returned, taken in manner *aforesaid,* shall be received as legal evidence." This reference is clearly to the preceding part of the same section, or to the preceding section ; and as the manner of taking and returning the depositions, is no less defined in the 11th section than in the 12th section, the supposed reference to the 13th, either in aid or explanation of the former, is evidently excluded. The 13th section authorises either party to a suit depending, who wishes " to *improve* the testimony of witnesses *absent from the State,*" to take the same by *interrogatories,* the party making oath, in addition to the circumstances of necessity, as required in the preceding sections, that he believes the testimony *material.* In such case the commissioner is required to call the witness before him, *at a time and place by him to be appointed.* But the party applying for such *dedimus,* shall file his interrogatories in the clerk's of-

fice, and serve the opposite party with a copy thereof; with notice of the day on which such *dedimus* will issue, at least ten days before the same shall issue ; in which time the opposite party may file his cross interrogatories, &c. · This course is so entirely different from that prescribed, for taking *running depositions,* that it is impossible to reconcile them ; the other being as above quoted, that the party obtaining the commission shall give such notice to the adverse party of the time and place of taking the testimony, as the *officer granting it shall think proper,* and that the adverse party shall have liberty to *cross examine.*

Stress is laid, in argument, on the import of the verb *to improve* as expressed in the beginning of the 13th section—" either party wishing to improve the testimony of witnesses absent," &c. Whether its acceptation should be " to use or employ," as formerly understood ; or according to its more modern definition *to raise to a higher degree of perfection ; to correct that which was before defective ;* or, having regard to the context and subject matter, *to procure or secure,* it is still undecisive of the question under consideration. As the sections contain distinct and independent provisions for taking testimony in the different modes, each must stand and operate for itself in the proper cases. Then, unless the 13th section be construed as applying exclusively to resident witnesses, who may be temporarily absent, in contradistinction to such as are contemplated in the preceding sections, (which is not a material question in this case) the consequence must be, until the Legislature will establish a more certain and uniform method, that the party, seeking such testimony, is at liberty to elect either course.

4. It was also objected to the testimony, that, by the directions of the commission, the commissioners were required to take the depositions "on the 10th. day of August, to continue from day to day for three successive days, unless the object should be sooner accomplished ;" and it appeared that the depositions of the witnesses were written on separate sheets of paper, (though attached together,) and each separately certified—some taken on the tenth, some on the eleventh, and some on the twelfth of August, and it did not appear that the examination had been continued by adjournment, from day to day, nor that the same was necessary ; which objection was overruled.

As an authority relied on to sustain this exception, the case of *Buddicum* vs *Kirk*[a] is cited. There, the notice to the adverse party was, that the deposition would be taken on the 8th of the month, and, if not taken in one day, that the commissioners would adjourn from *day to day*, until it should be finished, and that he agreed it might be taken on that day whether he attended or not. The commissioners having accordingly met on the 8th, adjourned to Monday the 10th, and from day to day to the 12th, and from that day to the 19th, when the deposition was taken.

[a]3 Cranch, 293.

The Supreme Court of the United States intimated an opinion, that the adjournment for a *week*, instead of from day to day, would have been fatal to the deposition, but for peculiar circumstances in the case, which amounted to a waiver of the objection.

The circumstances of this case are essentially different. Authority was given the commissioners to continue the examination, if necessary, during the three particular days. This they did accordingly.

That they did not think it necessary to enter formal orders, or notes of adjournment, from day to day, during the time especially allowed by the commission, can not be material. Nor can the objection prevail, that the necessity of continuing the examination, is not otherwise shewn. Part of the testimony was taken on each day, and the presumption is, that the continuation was necessary to accomplish the object. The case of *The United States* vs. *Smith,*[a] also referred to in support of the same exception, can have no influence on this case. That was a decision of a Circuit Court of the United States, and involved the question, whether certain depositions had been taken in the manner prescribed by an act of Congress The act of Congress is so entirely different from ours, that a decision under one can afford no aid in the construction of the other; especially on the point there adjudicated, which related to the requisition in the act of Congress that depositions shall be reduced to writing by the magistrate taking them, or by the deponent in his presence. Our statutes contain no such direction.

5. But it also appears, from the bill of exceptions, that after the objections mentioned had been made and disallowed, the defendant moved to exclude from the jury, a certain part of the evidence, which is stated as follows: " it was material for the petitioner to prove, that he was, and had been in the northern army, and had gone there; the proof whereof, by one witness, was in the following words: ' Charles, (the petitioner,) lived in Windsor, until, according to the best of his recollection, about the commencement of the late war with Great Britain, when, as the deponent understood, by general report only, said Charles be-

a 4 Day, 121

came attached to the army.' By another 'that Charles lived in Windsor, with his parents, from his boyhood, until at or not far from the commencement of the late war with Great Britain, when, as deponent has understood by general remark, said Charles, in some way, became attached to the army ;' which motion was overruled, and the evidence submitted to the jury.

The chief difficulty in relation to this exception, is in determining whether the motion to exclude, sufficiently designated the part of the testimony which was excepted to as incompetent. The motion embraced evidence tending to prove two facts, susceptible of division— to one of which, the evidence was competent. If the motion was not so specific as to call the attention of the court, with reasonable certainty, to the parts of the testimony objected to, there would have been no error in overruling it, though some part may have been incompetent. This rule of practice is well sustained on principle, and is fully recognised by the Supreme Court of the United States, in the case of *Elliot, et al.* vs. *Piersol, et al.*[a] to which reference has been made by the petitioner's counsel. There, the defendant's counsel had moved the court to exclude the whole of the plaintiff's evidence, (consisting of several pieces or parts,) or to instruct the jury. that the whole was insufficient to sustain the plaintiff's title. On this point the court remarks, " the motion could not prevail, "on the ground of incompetency, unless the whole was incompetent, which is not pretended ; the court was not bound to do more than respond to the motion in the terms in which it is made. Courts of justice may, but are not obliged to modify the propositions submitted by counsel, so as make them fit

[a] 1 Peters', 328.

the case. If they do not fit, that is enough to authorise their rejection."

Is this a parallel case, or is the point one, on which, according to the principles quoted, the Circuit Court had a discretion? This motion to exclude, embraced the evidence of two simple facts, intimately connected; so much so, that perhaps the first, that the petitioner lived in Windsor until about the beginning of the war, was, and ought to have been considered, rather incidental or introductory to the other, than as a distinct material fact. The balance of the testimony of these two witnesses, which immediately follows, and is in substance the same, that about the begining of the war with Great Britain, " as deponent understood by general report only, said Charles became attached to the army;" we conceive to be of a very different nature, provided it could and ought to be separated from the former, by the court. The inference that this latter branch of the testimony was the main object of contest, and the one which engaged the attention of the court, and counsel, is strengthened by the part of the exceptions, which states that it was material for the petitioner to prove that he had been in the northern army. This question is believed to be, in other respects, materially different from the one referred to as having been decided at Washington. There, the proposition was to exclude the whole of the depositions of several witnesses, some of which were admitted to be competent; or to instruct the jury that it was insufficient. The court in that case, could not have ascertained, unless by conjecture, any particular part, that the counsel wished severed for exclusion. This motion designated but a small part of all the depositions, and though it extended to two

simple branches, the court should have considered of
both, and decided each according to its merits.  This
case, we think equally distinguishable from the prin-
ciples of our decision, at the present term, in the case
of *Moore vs. Leftwich.*[a]   ●           [a] 1 Stewart
                                          & Porter,
  Then, as respects the competency of the evidence, 254.
that the witnesses had understood, *by general report,*
or *by general remark,* that the petitioner had become
attached to the army ; unless it can  form an excep-
tion to the long established, and most invaluable rules
of evidence, it was clearly inadmissible.

  In the case cited in  argument, in support of this
objection, (*Mima Queen and Child* vs. *Hepburn,*[b]) the [b] 7 Cranch,
                                                   290.
opinion of the court, delivered by *Marshall,* C. J. re-
cognises in the most explicit terms, the true doctrine,
applicable to this question, in the various aspects in
which it should be viewed.   He adopts the principle,
that " all questions upon the rules of evidence are of
vast importance to all  orders and  degrees of men :
our lives, our liberty, and our property, are all con-
cerned in the support of these rules, which have been
matured by the wisdom of ages, and are now revered
from their antiquity, and  the good sense in which
they are founded.   One of these rules is, that ' hear-
say' evidence is in its own nature inadmissible.  That
this species of testimony supposes some better which
might be adduced in the particular case, is not the
sole ground of its exclusion,   Its intrinsic weakness,
its incompetency to satisfy the mind of the existence
of the fact, and the frauds which might be practised
under its cover, combine to support the rule."

  The distinction contended for in favor of *rumor* or
*reputation,* as being different and better than " hear-
say" in its legal acceptation, if just in any case, is not

admitted to exist in relation to a fact like the one here sought to be proved. This is a specific fact, which is, in its nature, no less susceptible of proof by witnesses speaking from their knowledge, than other ordinary occurrences, at the same distance; and which is necessary to be proved by one deprived of his liberty. It is not pretended that the distance, can justify an exception to the rule in this respect; but some reliance is had on the condition of the petitioner. Though he may . not have equal capacity, without the aid of counsel, to that of many others, in procuring testimony, it would be unsafe and unprecedented, for that cause, to relax the rules of evidence. The jury alone can take that matter into consideration. In the case last referred to, which was also a claim of freedom, the Supreme Court held that controversies of this nature do not authorise an exception to the rule of evidence, that *hearsay* is inadmissible. On the contrary, in mentioning the exceptions, the Chief Justice, in effect, denies this exception. He says, " to this rule there are some exceptions which are said to be as old as the rule itself. These are cases of *pedigree*, of *prescription*, of *custom*, and, in some cases, of *boundary*. There are are also matters of general and public *history*, which may be received without that full proof which is necessary for the establishment of a private fact." He mentions no other exceptions, and if others can be allowed, they must be in relation to peculiar facts, which, from their nature, may not admit of direct proof. If the petitioner was attached to the northern army, the presumption is, that many living witnesses can attest the fact.

6. The sixth objection, relates to the permission

given by the court, to the petitioner's counsel, to read to the jury from a book, purporting to be the laws of the state of Vermont, what he contended, was the law of said state, relating to this cause.    In as much as the exception taken on this point, does not satisfactorily describe the book, or shew whether it was proved or admitted, to have been published by the authority of that state ; or whether it was one procured by the secretary of state, pursuant to an act of the legislature of this state, to facilitate the proof of the laws of other ; and for the reason also that this point was not fully investigated in argument, and is not essential to the disposition of the case, we decline giving any decisive opinion upon it.

7.  The last exception to the evidence is, that the court permitted a witness to state, that the petitioner had made himself known to him, as having seen him in the northern army ; that he had called to his mind things that did happen there ; that from this circumstance, and his appearance, (he being evidently a northern negro) his recollection of his features was such, as to enable him to say he believed him to be the same ; that from view alone, he would not have known him, but his opinion was formed from both these circumstances.

. From this statement of the testimony, there is some difficulty in separating the admissible, from the inadmissible parts.    We are of opinion, however, that nothing that the petitioner had said to the witness, tending to prove the identity of the former, was evidence for him ; nor was the witness' opinion, from his appearance, that he was a northern negro.    The witness was competent to state his own recollection of the boy, relying on it alone, no matter how im-

proved, or refreshed ; but he was incompetent to state his belief, avowing it to rest partially, on information received from the petitioner.

Therefore, on the fifth and last points, we are of opinion the Circuit Court erred ; for which, the judgment must be reversed, and the cause remanded.

TAYLOR, J. not sitting.

