THE STATE *v.* FLOWER, Walk. Miss. Rep., 318.

### HOMICIDE.

A juror cannot be asked, either by the State or the accused, whether he has formed or expressed an opinion as to the guilt or innocence of the prisoner before he is challenged.

A hypothetical opinion, or one formed upon rumor, subject to be changed by the evidence on the trial, does not disqualify a person from serving as juror in the case.

*E. & F. Huston,* for defendant.

*Gaines,* attorney general.

TURNER. C. J.:

All the errors assigned in this case, except one, are deemed unsustainable, and, indeed, were not relied on by the counsel of the plaintiff in error in their second argument. The error mostly relied on by them, is presented in the following part of

the bill of exceptions, to wit: "That on the trial of said indict-
ment, S. D. Roberts was called, and tendered by the state, to
the prisoner, as a juror, and the prisoner requested the said
Roberts to be sworn to answer questions.   The court then asked
the said Roberts whether he had formed and expressed an opin-
ion as to the guilt or innocence of the prisoner?   And he ans-
wered that he had.   The court then asked him whether he had
formed this opinion from rumor or from statements of the wit-
nesses?   He stated that his opinion was formed from common
report.   The court then asked him if he had formed an opinion
as to the truth of said report?   He said he had not, and stated
that, if the evidence turned out as it had been represented to
him, he thought the prisoner guilty.   The court then permitted
the said Roberts to be sworn in chief, to which opinion the
counsel for the defendant excepts."

The first thing which strikes my mind, on reading this excep-
tion, is that the court allowed the juror to be sworn to answer
questions *before he was challenged.*   It is a settled rule that
neither party has a right to *interrogate* a juror before he is
challenged.

The form of doing this is laid down in 1 Chitty's Crim. Law,
p. 546; and in Burr's trial, the chief justice said, "Unless the
challenge is made, it will be improper to draw out any expres-
sion from the juror;" and further, "that the court must un-
doubtedly direct the same mode of challenge on the part of the
U. S. as on the part of the prisoner."   Pages 70, 71 and 72 of
Vol. 2, by Carpenter.

But, as the court below treated this as a challenge, we will
waive the informality, and proceed to consider the substance of
the matter as if the challenge had been made by the prisoner.

Both the American and the English law declare that the
accused shall have an *impartial* trial; that "the jurors shall
stand indifferent as they stand unsworn."   It is certainly desir-
able that the accused have a jury composed of men wholly free
from prejudice or bias for or against him.

How this matter really is, in practice, we all know, who know
anything of trials and prosecutions for public offenses in our
country.   The accused must be tried in the county where the

offence is alleged to have been committed; he is entitled to a jury of the vicinage where a crime is committed, and more especially where one is accused thereof. When arrested and taken before the examining magistrate, whether the accused be bound over to court or discharged, the affair excites public attention; the people take an interest in the case; they cannot help listening to reports, and will indulge in conversation about the case; and, in our free country, they will express opinions among each other. They think they have a constitutional right to do so; and men often express opinions, in such cases, on hearing one story, and change them on hearing another story; and finally, after having formed and expressed opinions pro and con, when they come to court, witness the trial, hear the evidence, the arguments of the counsel and the opinion of the judge, they will forget or abandon their preconceived opinions, and decide impartially between the accused and the state. Men are more likely to act thus in our country than in England, where the judges declare it a *misdemeanor* for a man to prejudge another's cause.

Hence, some decisions, recited in Hawkins and repeated in more modern days, that the formation of such loose, out-of-door opinions, will not disqualify, unless they are formed *maliciously;* and hence the remarks of Ch. J. Marshall as reported in Burrr's trial: "This general principle of law is, that a juror whose mind is prepared to go upon the case to receive his convictions of the guilt or innocence of the accused from the testimony, and that only, is the only proper person to be called an *impartial* juror. But, a different character, the law cannot trust. It apprehends danger from the result, and therefore declares him not to be fit to stand between the accused and the country. This is the general view which the courts have had with respect to qualification, that where a man has formed and expressed an opinion upon the case itself, upon a view of the whole case, he is not esteemed an impartial juror; but where a man has formed an opinion upon only part of a case, from testimony, such as he has seen or heard, or when the impression made is extremely slight, it merits a different treatment. The court has not said, nor will it say, that slight impressions should disqualify," etc.,

p. 63, 4. Again, in p. 66, the Ch. Justice said, "Now here is one of these jurors who has said, that if the public mind was true, the prisoner was guilty. Now the court thought this man a good juror, because he had left his mind open to conviction," etc., and he draws a distinction between an *active* and a *passive* opinion. The one excludes; the other does not.

Hence, also, in England, the court will not allow the juror to be asked whether or not he has formed and expressed an opinion, but if the prisoner challenges on the ground, he must adduce his proofs to the court to sustain his objections. See State Trials, Hawkins, Chitty, etc.

Our courts, however, do not consider this a misdemeanor; and do allow the juror to be examined on oath, to ascertain the state of his mind by this sort of evidence, as well as by the evidence of others.

The object of this investigation is to ascertain the state of the juror's mind; not whether he has heard of the case; heard rumors; heard the evidence, formed loose opinions and expressed them; but to ascertain whether the juror stands without malice, settled hate, or fixed, active prejudice against the accused; and whether he is a man who can be trusted to give a true verdict, according to the evidence. To do this, the juror may, after being challenged, be examined on oath, and if he shows clearly on his examination, that he is prejudiced either for or against the accused, the court should sustain the challenge. If it does not so appear on his examination, witnesses may be called and examined to ascertain the fact, and if the challenge is not sustained by the court, and the prisoner shall claim a different mode of inquiry, triers may be sworn to say on oath, whether the juror stands indifferent or not; 6 Cowen, 557; or the juror may be examined before the triers, and the prisoner may call and examine his witnesses before them, and when they decide their decision is final.

On this occasion the prisoner appears to have been almost passive; he exercised but a small portion of his privileges. It is expected that the accused will at least attempt to protect his own rights in every stage of the cause, and if he neglects to do so, it may be fatal to him. After the questions which were put

in this case had been answered, the juror's partiality or preju-dice not clearly appearing, the prisoner might have requested triers to be called, or he might have requested the court to let the juror stand aside for the present, to ascertain whether a full jury could not have been made up without him; or he might have challenged peremptorily. He did neither, and the record states that the court *permitted* the juror to be sworn, because the judge was not convinced that the juror was incompetent.

I am not satisfied, by what is stated in the bill of exceptions, that the juror was incompetent. I think it at least doubtful. But I consider, that in so important a case, the judge should have directed the juror to stand aside for the present until it could have been ascertained whether a full jury could have been obtained without him; and as some of my brothers are clearly of opinion that the juror was disqualified, I am not disposed to preclude the prisoner from another trial, and to pass sentence of death against him on a divided court, upon a doubtful case.

I will add, that the most respectable decisions show that a hypothetical opinion will not disqualify a juror. Sec. 8, John. Rep., 445, Burr's trial, and numerous other authorities. Nor will an opinion formed merely on report; 7 Cowen, 110.

I cannot acquiesce in the opinion that, after a juror says he has formed and expressed an opinion as to the guilt or innocence of the accused, the inquiry stop there. It is the duty of the court, in such case, to ascertain, fully, the state of the juror's mind, and for this purpose to question him, to ascertain whether the juror understands the question, the nature of the accusation, the object or view he had in so forming his opinion. This prac-tice is manifest by the report of Burr's trial, and in State trials, etc.

It is deemed proper to state, that these rules are made as well for the accused as for the state. We do not interrogate a juror to ascertain whether his opinion or bias is in favor of the accused or the state. He should stand indifferent as to both; and, in practice, I have nearly as often known the objection to come from the side of the one as the other party.

Judge Child concurs.

*E. & F. Husten* for the defendant; *Gaines*, Attorney Gene-ral for the state.

Challenges of jurors.—1 Cowen, 432; 6 do., 557, 564; 7 do., 108, 113; 2 Johns., 194; 1 do., 316; 8 do., 445; 2 Tidd, 779, 780; Bacon, title juries (E. 5); Bull N. P., 307; Hale's Com. Law, 138; 1 Co. Litt. 155–6; 2 Swift's System, 232; Trial *per pais*, 122–8; Chace's trial, App. 4, 19; Fire's trial, 177, App. 42; 1 Burr's trial, 43, 46, 370, 371; 2 Hawk. P. C. Ch., 43, Sec. 27, 28; 13 Mass., 221; 1 Chitty Cr. L., 542, 544; 1 Const. Rep. of So. Car., 289 to 321; 3 Dall., 518; 7 Cranch, 291.