JOHN WIGGINS, PLAINTIFF IN ERROR, *v.* THE PEOPLE OF THE STATE OF NEW YORK, DEFENDANTS IN ERROR.

*Grand larceny — evidence of — statements made by third persons — fictitious persons — how shown to be — hearsay.*

On the trial of an indictment for grand larceny, alleged to have been committed by means of a trick, by which the owners of the stolen property were induced to send it to fictitious persons, in consequence of which the prisoner feloniously acquired possession of it, the statements of persons of whom a witness for the prosecution inquired as to the existence of the persons to whom such property was directed to be sent, are hearsay, and not proper evidence against the prisoner.

WRIT of error to the Court of General Sessions of the county of New York.

. The plaintiff in error was indicted in the Court of General Sessions of New York city, for grand larceny, in October, 1874, was tried, before the city judge and a jury on the 13th of November, 1874, and was convicted and sentenced to the State prison for the term of five years.

On or about the 6th of October, 1874, Mr. Edmund D. Bradshaw, a commission merchant and resident of Alton, Wayne county, in this State, received through the mail, in regular order, a ' letter purporting to have been sent by the firm of "A. A. Greeley & Co.," of Middletown, Connecticut, which letter requested and directed Mr. Bradshaw to forward to the firm of " Peter Y. Clark & Co.," of New London, Connecticut, from 600 to 1,000 pounds of butter, at a price not to exceed thirty-eight cents per pound, and to draw immediately upon "A. A. Greeley & Co.," at sight, for the amount shipped. In obedience to. the order, and in compliance therewith, Mr. Bradshaw did ship to the firm of Peter Y. Clark & Co., New London, Connecticut, about the sixth of October, fifteen tubs and one. firkin, containing in all over 800 pounds. The butter was at once returned from New London to the city of New York, and then went into the prisoner's possession. It was claimed by the prosecution that the prisoner had previously obtained the butter by applying for its purchase in the name of

Peter Y. Clark & Co., and certain evidence was given on the trial of conversations had with a witness for the prosecution, tending to show that the firm named as purchaser of the property, and the drawee of the draft were fictitious.

*John O. Mott*, for the plaintiff in error. The court erred in admitting the evidence of the witness Bradshaw. This evidence was mere hearsay, and was clearly inadmissible. (1 Greenl. Ev. [12th ed.], 114, § 99; 1 Phil. Ev. [4th Am. ed.], 169; Roscoe's Crim. Ev. [6th Am. ed.], 22; *Jackson ex dem. The People* v. *Etz*, 5 Cow., 319, 320; *Woodward* v. *Raine*, 15 Johns., 493; see 1 Phil. Ev. [4th Am. ed.], 211, § 2.)

*Benj. K. Phelps*, district attorney, for the people. The evidence was not secondary. (1 Phil. Ev. [Edw. ed.], 469, note 163; 1 Chitty Crim. Law, 567, and cases cited; *Ainsworth* v. *Greenlee*, 1 Hawks, 190; *Governor* v. *Roberts*, 2 id., 26; *Executors of Schoenberger* v. *Hackman*, 37 Penn., 87; *Liebman* v. *Porkey*, 1 Starkie, 167.) The object was not to prove the truth of the fact by this hearsay evidence, but of the fact that he made the inquiries or search, and, in such cases, it is never necessary to call the persons of whom the inquiries were made. (*Key* v. *Shaw*, 8 Bing., 320; *Morgan* v. *Morgan*, 9 id., 359; *Bartlett* v. *Decreel*, 4 Gray, 111; *Shott* v. *Streatfield* 1 Moody & Rob., 8; *Whitehead* v. *Scott*, id., 2; *Phelps* v. *Foot*, 1 Conn., 387; *Foulks* v. *Sellway*, 3 Esp., 236; *Jones* v. *Perry*, 2 id., 482.)

DANIELS, J.:

The prisoner was indicted, tried and convicted of the crime of grand larceny. It was committed by means of a trick or device, by which the owner of the property was induced to send it by express and steamer, from Alton, in Wayne county, to New London, in Connecticut, addressed to Peter Y. Clark & Co., and to draw a sight draft for the amount of the price on A. A. Greeley & Co., at Middletown, in the same State. The butter which was the property sent forward, soon afterward reached New London, from whence it was immediately returned to New York, where it went into the possession of the prisoner. It was the theory of the

prosecution, that he procured the property by feloniously applying for its purchase in the name of Peter Y. Clark & Co., to be paid for by a sight draft on A. A. Greeley & Co., when there were no such firms as those names imported the existence of, but the names were made use of, simply for the purpose of deceiving the seller. The prosecution, to make out the people's case, undertook to prove, as it was important it should, that the firms named as purchasers of the property and drawee of the draft, were fictitious. To prove that, Bradshaw, the complaining witness, was subjected to an extended examination. He sent the property forward to New London, early in October, 1874, and the trial was had on the thirteenth of November following. The day preceding the trial he went to Middletown and New London, and from various inquiries then made by him, ascertained that neither of these firms existed, either at that time, or when the butter was ordered of him; and the prosecution proposed and was allowed to prove these facts, by showing the inquiries which had been made, and the information received by means of them. The important circumstance to be shown in the case was, that these firms did not exist at the time when the property was ordered and sent forward, and for the purpose of establishing it, the witness was allowed to state the inquiries made by him, and the answers secured, both as to the day preceding the trial, and the time when the butter was ordered. The prisoner's counsel objected to the questions propounded to the witness in order to elicit this proof, and a number of exceptions were taken to the rulings made upon them by the court. He finally asked the court to allow him to renew the objections previously made to the conversations between the witness and the persons he conversed with in Connecticut. The court in response stated that he should be considered as objecting and excepting to everything, and with that announcement the witness proceeded with his relation of what had transpired. In the course of it he was asked whether he limited the inquiries made at Middletown to the time of the butter transaction, and answered, that he asked if there was or had been such a firm. He was also asked for the result, and stated it to be, that there was no such firm, and had not been, as A. A. Greeley & Co., at Middletown. It is unnecessary to discuss the proposition, whether an exception taken in this manner will present the point

of the admissibility of the evidence given, though it probably would under the circumstances which existed when it was made. For the same point was specifically raised upon the proof which was offered and received concerning the inquiries made in New London. The witness mentioned several persons of whom he had there inquired concerning the existence of the firm of Peter Y. Clark & Co., and stated that they all gave him but one answer, which was, that there was no such firm there, and never had been, as Peter Y. Clark & Co. The court then remarked that this was admissible, and the prisoner's counsel excepted to the decision. The question is therefore presented, whether the answers given to the questions propounded near the middle of November, could be lawfully and properly received as competent evidence to prove that either one or both of these firms did not exist in the early part of the preceding October. The facts to be proven were that neither did exist at that time, and all the information the witness endeavored to obtain, and the statements he repeated in the evidence given by him, were in support of that conclusion. And the evidence given by the witness as proof of these facts, was not his own observations or knowledge, but simply the unsworn statements and reports of other persons, who were not before the court, and could not be examined or cross-examined to determine the accuracy of what they had related. To allow evidence of that description as proof of material facts required to be established to sustain a criminal prosecution, would be extremely unjust and dangerous to the accused. It would subject him to a trial by witnesses not confronted by him, permitted to give their evidence without even the semblance of an oath or affirmation. The important inquiry in the case was, whether what the persons stated to Bradshaw was true; not whether he truthfully repeated what they had said to him. If it was, then the fact was as the prosecution claimed it to be, and the substantial means for its determination consisted of unsworn statements made in answer to his questions. It was a trial of the accused upon what the law denominates hearsay evidence, which, though admissible for certain exceptional purposes, in controversies affecting certain notorious public interests, and in some other cases, has always been rejected as proof of material and particular facts capable of being proved by the positive evidence

of persons having actual knowledge on the subject. (1 Greenl. on Ev. [12th ed.], § 99; *Queen* v. *Hepburn*, 7 Cranch, 290, 295; Roscoe on Crim. Ev. [6th ed.], 268; *Jackson* v. *Etz*, 5 Cowen, 314, 319, 320.)

Cases have been referred to in support of the ruling made at the trial, as at least countenancing the course there adopted. But a brief reference to them will render it entirely manifest that they do no such thing. In *Foulke* v. *Sellway* (3 Esp., 236), the reports allowed to be shown concerned the plaintiff's character, which the law uniformly permits to be proved substantially in that way. This forms a well established exception to the general rule. In *Jones* v. *Perry* (2 id., 482), the truth of the rumors that the dog was mad was not important. It was the fact of their existence which alone was material; and where that is the case they may be proved like any other circumstance involved in controversy. They influenced the conduct of the party, and whether true or false the effect upon him would be the same, while in the present case the truth of the reports, and not their mere existence, was the important thing to be shown. *Morgan* v. *Morgan* (9 Bing., 359), is a case included in the same principle, and so is *Bartlett* v. *Decreet* (4 Gray, 111). The inquiry was, whether the statements in the one case, and the repute in the others, existed; not whether they were true or untrue. Neither of these authorities lends the least support to the ruling by which the evidence referred to was received in the present case, and in view of the clearly defined and well established rule on this subject, by which hearsay evidence, as proof of facts which can be otherwise readily established, is commonly rejected, there is not the least probability that any well considered case sustaining it can be found. The accused may very well be, and probably is, guilty of obtaining the property mentioned in the indictment, by criminal means. But, even if that be the case, he can only be lawfully convicted of the offense by legal evidence. That was not done in this case, and the judgment should therefore be reversed and a new trial ordered.

DAVIS, P. J., and BRADY, J., concurred.

Judgment reversed, and new trial ordered.