## SEXTON v. HOLLIS.

1. The Circuit Judge did not violate the constitution in charging the jury that they could only find for plaintiffs a stated proportion of the land in dispute where the uncontradicted testimony showed that the plaintiffs were entitled to recover no more.
2. A purchaser paid for land, took possession, and collected the rents, but the titles were made to another. *Held*, that a trust resulted to such purchaser.
3. In action for the recovery of land, parol evidence is inadmissible to show that some twenty to thirty years ago a party, under whom defendant claims, was "the reputed owner" of this land.
4. The inadmissibility of hearsay evidence, and the exceptions to this rule, discussed.

Before KERSHAW, J., Union, March, 1886.

This was an action by the heirs at law of B. W. Sexton against G. T. Hollis. The opinion states the case.

*Mr. D. A. Townsend,* for appellant.

*Mr. David Johnson, jr.,* contra.

March 7, 1887. The opinion of the court was delivered by

MR. JUSTICE McIVER. The plaintiffs bring this action to recover possession of a certain parcel of land, of which defendant holds possession under a claim of title. It is conceded that the land in question was once owned by one William Blackburn, and both parties claim under a conveyance from the heirs of Blackburn. The plaintiffs introduced a deed for the land in question from Jesse Dodd to William Blackburn, dated December 13, 1833, and a deed from the heirs of said Blackburn to B. W. Sexton, the husband of the plaintiff, S. A. M. Sexton, and the father of the other plaintiffs. Neither of these deeds was recorded, but both were witnessed and probated by one Thomson Dodd, the father of Mrs. Sexton. B. W. Sexton died in 1862, intestate we presume, as it seems to be assumed that the plaintiffs are entitled to claim as his heirs at law. The defendant claims under the heirs of Blackburn, through Thomson Dodd, but produced no deed from said heirs to said Dodd, though he made out a regular chain of title, by conveyances duly recorded, from Thomson Dodd down to himself. He claims, however, 1st. That though the deed, above mentioned as introduced by the plaintiffs, was made to B. W. Sexton by the heirs of Blackburn, yet in fact Thomson Dodd paid the purchase money and immediately went into possession of the land, as his own, and so continued until the year 1868, when he conveyed it to his sons; and that thereby a resulting trust in his favor arose. 2nd. That Thomson Dodd had acquired a title by adverse possession before he conveyed it to his sons in 1868.

It appeared from the uncontradicted testimony of two witnesses, one of whom was the plaintiff, Mrs. Sexton, that two of the heirs

of William Blackburn, who signed the deed above mentioned to
B. W. Sexton, were, at the time, married women, and there was
no testimony whatever tending to show that either of these ladies
had renounced her inheritance in the manner prescribed by the
statute law then in force.   At the trial defendant's counsel was
permitted, notwithstanding the objection of plaintiffs' counsel,
to ask one of the witnesses for plaintiffs, while on his cross-exam-
ination, who was "the reputed owner" of the land in 1854—the
Circuit Judge saying that he thought it was admissible, "partic-
ularly where the claim is, as has been stated, on an unrecorded
deed, and the defence is the subsequent purchase without notice."
The witness at first replied : "I do not know," probably not
understanding the question, for he afterwards said : "I don't
know who was the owner.   It was generally understood that
Thomson Dodd was the owner.   But now whether it was so, I
don't know."   This witness, in reply to a question from the court,
said he did not know who was in possession of the land.   Another
witness, introduced on behalf of the defendant, was permitted to
testify that Thomson Dodd was generally understood to be the
owner of the land, which testimony was likewise objected to.

All the various questions of fact arising on the testimony were
fully, clearly, and impartially submitted to the jury by his honor
in his charge, which is set out in the record, near the conclusion
of which he used these words : "If you find a verdict for the
plaintiffs—if you find the whole of the land, that is if there is
any view of it you can take, I don't see the view of it that you
can, it does not seem to be denied that these were two married
ladies—the plaintiffs should recover only 5-9 of the land in dis-
pute."   The jury having returned with a request for further
instructions, they were instructed by the Circuit Judge as follows :
"I understand the question is, that if Thomson Dodd paid the
money for the land, bought the land, whether, if it was for him-
self, although the title was made to another, and collected the
rent—whether that would be equivalent to a title, whether it
would give him title.   That is the question ?"   And being in-
formed by the foreman of the jury that it was, the court answered
that question, "yes."

The defendant had a verdict, and judgment having been entered

thereon, the plaintiffs appeal, on the following grounds: "I. For that his honor erred in allowing the witnesses to testify that Thomson Dodd was the reputed owner of the land in dispute at certain times mentioned by them. II. For that his honor erred in charging the jury that if Thomson Dodd paid the money for the land (in dispute), .bought the land, whether [if] it was for himself, although the title was made to another, and collected the rents, that would give him title. III. For that his honor violated the constitution of the State in charging the jury, 'If you find a verdict for the plaintiffs, if you find the whole of the land, if there is any view you can take, I don't see the view of it that you can—it does not seem to be denied that these were two married ladies—the plaintiffs should recover only five-ninths of the land in dispute.'"

We propose to consider these grounds in their inverse order. As to the third, it is quite clear that it cannot be sustained. There was really no issue of fact as to whether the two ladies were married women at the time when they signed the deed from the heirs of Blackburn to B. W. Sexton, for that was the undisputed testimony, coming from one of the plaintiffs herself, as well as from another witness. That being so, and there being no testimony whatever, even tending to show that these ladies had ever renounced their inheritance, we, like the Circuit Judge, are unable to see any view which the jury could take of the case, which would entitle the plaintiffs to recover more than five-ninths of the land. We are satisfied that the Circuit Judge did not invade the province of the jury, and did not violate the provisions of the constitution, and that any other conclusion would amount to a perversion of the terms of that instrument to a purpose which it never was designed to accomplish.

As to the second ground of appeal, we think it is manifest that the word "if" was inadvertently omitted at the point we have indicated, for without that word the sentence is scarcely intelligible. But when we turn to the instruction excepted to, as set out in the "Case" we find the word "if" inserted at its appropriate place. To the instruction, as stated in the "Case," especially when read in connection with the whole charge, as it should be, there can be no valid exception; for in the contingency there

stated there is no doubt a resulting trust would arise. Indeed, it would seem from the fact that no allusion is made to this exception in the brief submitted by the appellant's counsel, that it had been abandoned. But as the case was submitted without oral argument, and it is not stated in any of the papers furnished the court that this exception was abandoned, we have not felt at liberty to so regard it. We can only say that we are unable to discover any well founded objection to the instruction complained of, and none has been suggested in argument.

The first ground of appeal presents a much more serious question. It is quite clear that the turning point of the case was, whether Thomson Dodd had ever acquired title, either by way of resulting trust or by adverse possession. For if he had, there being no evidence that his title ever passed to the plaintiffs, it is very manifest they could not recover. It seems to us that the testimony excepted to was incompetent to establish, or to aid in establishing, this very material point in the case. To say that one is the reputed owner of a certain tract of land, is certainly no evidence of his title to such land. Common repute is nothing more than the prevailing belief in a certain community, and to allow that to be adduced as evidence upon an issue of title would be to substitute the belief or opinion of the community for that of the jury called on to pass upon such issue. The question is, what do the jury believe? and not, what is the generally received opinion in the neighborhood? and the belief of the jury must be formed from the legal and competent testimony adduced in the case.

This class of testimony falls under the head of *hearsay evidence*, which, as a general rule, is clearly incompetent. It is true that there are certain well recognized exceptions to this rule, which in several of the cases are said to be as old as the rule itself; but we do not think that this case comes within any of these exceptions, which are confined to cases of pedigree, of prescription, of custom, and in some cases of boundary, and also matters of general and public history. *Mima Queen* v. *Hepburn*, 7 *Cranch*, 290; recognized in *Ellicott* v. *Pearl*, 10 *Peters*, 412, and in *Hopt* v. *Utah*, 110 *U. S.*, 574. In England these exceptions seem to be confined rigidly (except in cases of pedigree) to cases of a public or *quasi* public nature, in which the

rights of many persons are involved, but are not recognized in cases of private rights, especially as to a specific fact; for there general reputation as to boundaries between private estates is not admissible, while it is admissible as to boundaries between parishes, &c., because in such cases the question is of a *quasi* public nature. In this country, however, the exceptions seem to have been extended so as to render such testimony admissible in cases of boundaries between private estates (*Ellicott* v. *Pearl, supra*), as well as to admit the declarations of deceased persons, who shall appear to have been in a situation to possess the information, and not interested, on questions of boundary between private estates, as, for instance, the declarations of surveyors, chain carriers, &c. *Spear* ads. *Coate*, 3 *McCord*, 227; *Blythe* v. *Sutherland, Ibid.*, 258; *Hunnicutt* v. *Peyton*, 102 *U. S.*, 333. But we are not aware of any other exception which has been recognized either by the courts of this country or of England, and as we are admonished by Chief Justice Marshall in *Mima Queen* v. *Hepburn, supra*, of the danger of allowing fresh exceptions to a well settled and highly salutary rule of evidence, we are not inclined to do so.

The foregoing views are fully supported by the following authorities, in addition to those already cited: 1 *Stark. Evid.*, 60, *et seq.*, and the cases there referred to (especially the case of *Doe d. Didsburry* v. *Thomas*, 14 *East*, 323, where in an action of ejectment the lessor of the plaintiff claimed as tenant in tail under the will of A who gave B, his son, an estate for life, and the defendant claimed as the devisee of B, and the question was, whether the land in dispute was part of the entailed estate, or had been purchased by B, it was held that evidence of reputation that the land had been purchased of J S was inadmissible); 3 *Stark. Evid.*, 1207, and the cases there cited; *Reed* v. *Jackson*, 1 *East*, 357. The only case which we have been able to find which even appears to be in conflict with these views is that of *Bishop of Meath* v. *Belfield* (1 *Wils.*, 215), though it is not very clear that it is in conflict. But that case was decided by a divided court, and was declared by Lord Kenyon in *King* v. *Eriswell* (3 *T. R.*, 723), not to be law, and we do not find that it has ever been recognized as such. True it is that in *King* v. *Eriswell* the court was equally divided, but it is said by Chief Justice Mar-

shall, in *Mima Queen* v. *Hepburn, supra,* that it was afterwards determined that the evidence was inadmissible.

We are, therefore, of opinion that the Circuit Judge erred in receiving the testimony objected to in this case, as it is not competent to show that Thomson Dodd was the reputed owner, or was generally understood to be the owner of the land in dispute.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that court for a new trial.