HAMILTON & SON, Respondents, v. WABASH, ST. LOUIS and PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, March 2, 1886.

1. EVIDENCE—PEDIGREE—PROOF OF—HEARSAY.—In cases of pedigree, in the human family, "oral declarations are equally primary as family records, or other documents of the nature of hearsay, but the *competency* of each depends, not, indeed, on entire absence of more satisfactory evidence, but on *the death of the declarant;* and if he is alive, and present, or within reach of process, the declaration, whether oral or written, is incompetent, except as against him and those claiming under him or by way of corroboration of testimony given by the declarant as a witness." Abbott's Trial Evid. 96.

2. ———  ——— ANCESTRY OF HEIFER—CASE ADJUDGED.—Where evidence was offered and admitted as to a heifer, claimed to be a "thoroughbred," a statement made by the brother of the plaintiffs, and others as to the breed, etc., to plaintiffs *was* incompetent, as it did not appear that the parties who made the statements were either dead or beyond the process of the court; and so a paper, purporting to give the pedigree of the heifer, admitted in evidence, was incompetent for the same reason; and the admission of such evidence is ground for reversal.

*Reversed and remanded.*

Statement of case by the court.

This is an action, brought before a justice of the peace, for the recovery of damages on account of the killing by defendant of a certain heifer, the property of plaintiffs. The plaintiffs had judgment before the justice, and the defendant appealed to the circuit court. In the latter court the plaintiffs proved the killing of the heifer as alleged in the petition. The real controversy seems to have been as to the value of the heifer. Upon this subject the bill of exceptions is as follows: "S. Hamilton, one of the plaintiffs, testified * * * She was two years old past, and with calf by a thoroughbred bull. She would have had a calf in March if she had

lived. The bull was owned by Peyton Foster north of town, and I know he was a thoroughbred because Foster told me he was. She was worth one hundred and twenty-five dollars. She was a thoroughbred and with calf by a thoroughbred bull as I have stated. I have handled cattle for a great many years. This was as nice and as fine looking an animal as in the county. Outside of any record, she looked like a thoroughbred.''

Cross-examination. "I understand a thoroughbred to be one whose ancestry on both sides is perfect in blood and duly recorded in the American Herd Book, and so recognized by the authorities. I know this animal was a thoroughbred, because I have here her pedigree (witness producing a paper and handing it to plaintiffs' attorney, who thereupon offered it in evidence for plaintiffs, to the introduction of which defendant objected; for the reason (1) that the paper was irrelevant, incompetent and improper. (2) That it appeared to be a paper gotten up and signed by plaintiffs themselves. (3) That it could have no bearing upon the question whether the animal was a thoroughbred. (4) There was nothing in the paper entitling it to be read in evidence. (5) It was not certified to nor was there any proof of its being a copy of anything entitled to be received in evidence. Which objections the court overruled and admitted said paper, to the overruling of which defendant excepted.''

The said paper was without date and was substantially as follows :

"PEDIGREE OF THOROUGHBRED SHORT-HORN.

"Name, Lady Bates ; sex, heifer ; calved November 1, 1881, bred by Hamilton & Son, Kirksville, sired by Oxford Airdrie, 9,044 ; dam, Clara, by British Bridegroom, 28,717 ; dam's dam, Leora, sired by Jack Tar, 14,559 ; third dam, Leora 1st, by Dick Yates, 7,826 ; fourth dam, Silva, by Imported Admiral, 2,473 ; fifth dam, Silva Grove, by John O'Gaunt, 11,621 ; sixth dam, Lady Washington, by Daniel Boone, 11,330 ; seventh dam,

Henrietta, by Bulwer, Jr., 302 ; eighth dam, Orange, by Bascom, 234 ; ninth dam, Daisy, by Triumph, 1,504 ; tenth dam, Sciota, by Imported Symmetry, 5,382; eleventh dam, Imported Daisy, by Blaize 76.

"I hereby declare the foregoing pedigree and statements are true to the best of my knowledge and belief, and I make this affidavit after taking all available means to satisfy myself that they are correct.

"Signed,                    S. Hamilton & Son."

Witness Hamilton then continued as follows :

"The reason I know she was a thoroughbred is because her ancestors on the dam's side have been in my family and my brother's family in Illinois for fifteen years and in mine for the last nine years. I learned of my brother that they were in his family. On the sire's side I know the ancestry were thoroughbred. I knew of them in Illinois, and the owners of them told me they were thoroughbred. What I say about her being a thoroughbred is from what my brother and others in Illinois told me, except that portion of the time I had some of her ancestry on the dam's side myself. I have no personal knowledge myself that she actually was a thoroughbred only as I have stated and her appearance." (Defendant here objected to all the evidence of this witness as to the animal and Foster's bull being a thoroughbred, and asked that the same be stricken out, for the reason that it was incompetent and hearsay, which objection the court overruled and refused, to which overruling and refusal the defendant excepted).

"This heifer would have weighed between eight and nine hundred pounds. If it should not be true that this heifer was a thoroughbred she would not be worth to exceed twenty-five dollars, and when I say she was worth one hundred and twenty-five dollars it was on the theory that she was a full thoroughbred. Taking her just as she was, just before the injury, and allowing that she was

not a thoroughbred, she would only be worth twenty-
five dollars."

The defendant asked the court to declare the law as
follows.

"2.    That from the evidence in the case, the plain-
tiff can only recover twenty-five dollars."

"3.    That there is no competent testimony in the
cause showing that the heifer was a thoroughbred."

"4.    That there is no competent evidence in the
cause that the heifer was registered in the Herd Book, or
that any of her dams or sires were so registered."

"5.    There is no competent evidence in the cause
that the sires or dams of the heifer were thoroughbred,
or that the heifer herself was a thoroughbred, and, there-
fore, the finding cannot be for more than twenty-five
dollars, the amount plaintiffs stated in evidence she was
worth, if she was not a thoroughbred animal."

The court refused all of said declarations of law, and
sitting as a jury, found for the plaintiffs in the sum of
one hundred and twenty-five dollars.

GEO. S. GROVER, for the appellant.

I.    The evidence admitted as to pedigree was clearly
hearsay.    When declarations are made for the express
purpose of being given in evidence, as to pedigree, they
will not be received.    *Chapman v. Chapman*, 2 Conn.
349.    The *paper* did not purport to be either the original
or a certified copy of any record, which was required to
be kept by the law of this or any other state.    Hearsay,
admitted as evidence in questions of pedigree, must pro-
ceed from relatives.    *Childress v. Cutler*, 16 Mo. 47.    Nor
was it shown that the persons who made the statements
were no longer living or beyond the reach of proper pro-
cess of the court.    1 Wharton Evid., sects. 215, 218; 3
Phil. Evid. (3 Ed.) 231, *et seq.; Morrissey v. Wiggins*
*Ferry Co.*, 47 Mo. 525.

II.    The court refused proper instructions asked by
defendants.    See authorities cited above.

H. F. Millan, for the respondents.

I.    There is no law for keeping a record of the pedigree of stock. But the owner may give the pedigree of an animal he is selling.    Rev. Stat. sect., 1352.

II.    If the court erred in admitting evidence, and in refusing defendant's instructions, it did not materially affect the merits of the action and the judgment was for the right party.    *Haskins v. Adkins*, 77 Mo. 537.

III.    Where there is evidence to support the verdict, this court will not disturb it on the mere weight of evidence. *Berney v. Short*, 78 Mo. 73 ; *Tyler v. Larimore*, 19 Mo. App.

Hall, J.—The question in this case is, was the paper, purporting to be the pedigree of the heifer, and the other hearsay evidence, to which the defendant objected, competent evidence.

For the purposes of this case we shall concede that this question is to be determined in accordance with the rules of evidence governing in cases of pedigree in the human family.    The principle upon which hearsay evidence is held to be admissible in cases of pedigree has been thus stated: '' Oral declarations are equally primary as family records or other documents of the nature of hearsay, but the competency of each depends, not, indeed, on entire absence of more satisfactory evidence, but on the death of the declarant ; and if he is alive, and present, or within reach of process, the declaration, whether oral or written, is incompetent, except as against him and those claiming under him, or by way of corroboration of testimony given by the declarant as a witness.'' Abbott's Trial Evidence, 96. See, also, 1 Phillips on Evid. 248, and 1 Greenleaf on Evid., sect. 103.

Clearly the evidence of plaintiff, S. Hamilton, as to the statements made to him by his brother and others, touching the ancestry of the heifer, was incompetent, because it did not appear that the parties who made the

statements were either dead or beyond the process of the court.   The paper admitted in evidence as the pedigree of the heifer was incompetent for the same reason.   The paper was simply the written declaration of the plaintiffs as to the truth of the facts stated therein.   One of the plaintiffs was present in court and testified as a witness. The paper was hearsay just as would have been evidence of verbal statements to the same purport made by the plaintiffs.   The paper was neither an original memorandum made by the plaintiffs or either of them, nor a record required by law to be kept, nor a copy of such record.   The paper, as the testimony of the witnes Hamilton disclosed, was a statement of facts, not within the knowledge of the plaintiffs who made it, but principally based upon the statements made by others ; and the paper was no more competent than was the testimony of said witness as to what his brother and others had told him.

Plaintiff, S. Hamilton, testified that a "thorough-ored " is one " whose ancestry on both sides is perfect in blood and duly recorded in the American Herd Book." The hearsay evidence was incompetent for another reason. That evidence was not directed to the pedigree proper of the heifer, that is, as to what animals were the ancestors of the heifer ; but, on the contrary, it was directed to the quality of those ancestors, that is, as to whether they were thoroughbreds.   Whether or not any named ancestors of the heifer was duly recorded in the "American Herd Book" was susceptible of proof.   " At this limit the rule stops.   It does not admit hearsay as to a specific fact, however closely connected with these facts of family history is one, which, in its nature is susceptible of being proved by witnesses speaking from their own knowledge, even although such witnesses are dead." Abbott's Trial Evidence, 91.

Under this rule it was held that hearsay evidence was incompetent to prove that the female ancestor of a slave was free.   *Mina Queen and child, Petitioners for*

*Freedom, v. Hepburn,* 7 Cranch, 290 ; opinion by Chief Justice Marshall.    This case was followed in *Negro John Davis et al. v. Wood,* 1 Wheaton 6.    In this latter case hearsay evidence was admitted to prove who was the petitioner's ancestors ; but hearsay evidence to prove that such ancestor was free was, it is held, properly excluded.

We cannot agree with the plaintiffs' counsel in his contention that the defendant was not injured by the admission of the hearsay evidence.    The plaintiff, S. Hamilton, had defined a "thoroughbred," and had testified that the heifer as such was worth one hundred and twenty-five dollars, whereas she would have been worth only twenty-five dollars had she not been a "thoroughbred."    By such testimony the witness unquestionably meant that the heifer was worth one hundred and twenty-five dollars as a "thoroughbred," such as he had defined a "thoroughbred" to be, that is, "one whose ancestry on both sides was perfect in blood and duly recorded in the American Herd Book."    Although the plaintiff did testify that the heifer "outside of any record looked like a thoroughbred," we do not think he could have been understood as meaning thereby that her appearance alone made her worth one hundred and twenty-five dollars.    We have no doubt that, from all the testimony, the plaintiff intended to say that the heifer's value was enhanced by her pedigree as a "thoroughbred," in connection, of course, with her appearance.    And inasmuch as the said pedigree was proved by incompetent evidence, the judgment must be reversed and the cause remanded. Which is accordingly ordered, with the concurrence of Philips, P. J ;    Ellison, J., does not sit.