# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

---

## THIRD DISTRICT—NOVEMBER TERM, 1889.

---

### OHIO & MISSISSIPPI RAILWAY COMPANY

v.

### I. M. STRIBLING.

| 38 | 17 |
|----|----|
| 38 | 47 |

*Railroads—Negligence—Injury to Stock—Evidence—Instructions.*

1. In an action to recover from a railroad company for the killing of stock upon its track, where it is alleged that the engineer of the train in question was negligent in not seeing the same soon enough to avoid the injury, the question of negligence is, under proper instructions, for the jury.

2. An instruction setting forth that " when a railroad is properly fenced an engineer running a train thereon has a right to presume that he will find a clear track, except at public highway crossings and in villages, towns and cities, and is not bound * * * to keep on the lookout for animals trespassing upon the right of way elsewhere," should not be given.

3. Likewise one setting forth that if the jury should find from the evidence that the engineer " did not see the animal * * * until it appeared on the track in front of his engine, and that if he then used all reasonable effort to stop his train, and prevent injury to the animal, the verdict should be for the defendant."

4. An engineer is not bound to stop his train, in case of stock upon the right of way, where it reasonably appears that whistling will avert danger thereto.

5. Evidence as to the condition of the gate through which the animal injured passed to go upon the track, is pertinent to the question of contributory negligence on the part of the plaintiff in such an action.

6. Evidence as to the name of the sires of the animal and unborn foal, is admissible as an element of market value.

[Opinion filed May 24, 1890.]

APPEAL from the Circuit Court of Cass County; the Hon. LYMAN LACEY, Judge, presiding.

Messrs. POLLARD & WERNER and HENRY PHILLIPS, for appellant.

The testimony of the plaintiff, that the gates were left open and that he did not know it, and that the animals passed through them upon the right of way, was immaterial, as the only negligence charged in the declaration was in the running of the train.

This testimony had a tendency to prejudice the minds of the jury, and lead them to believe that this condition of the cattle guards and the gates made defendant liable in this suit.

The testimony of Dr. Scales as to what horse the mare was reputed to be in foal by, and what horse the mare was reputed to be sired by, was incompetent. These facts can only be proved, like other facts, by witnesses who have knowledge of them. This was so decided in Hamilton v. W., St. L. & P. Ry. Co., 21 Mo. App. 152.

In New Orleans & N. E. R. Co. v. Bourgeous, 5 So. Rep. 629, the Supreme Court of Mississippi held that the company was not liable for stock killed, although the engineer might have seen them before he did.

The case of Ill. Cen. R. R. Co. v. Middlesworth, 46 Ill. 494, modifies the old doctrine that a railroad company was liable for stock killed on its right of way when it was properly fenced, only in cases where the injury was wantonly or wilfully committed; but neither that, nor any subsequent case, has held a railroad company liable for not seeing cattle on its right of way alongside of the track. The farthest that any case that we know of has gone is to hold that it is negligence not to see an animal *on a straight track* in time to prevent injury. We insist that the judgment in this case should be reversed.

Mr. R. W. MILLS, for appellee.

It is needless to say that to sustain this judgment appellee

relies on the doctrines advanced by the Supreme Court of this State in the case of Ill. Cent. R. R. Co. v. Middlesworth, 46 Ill. 494.

Is not the language of the court in the Middlesworth case, *supra*, applicable to the facts in this case? Here it is: "It is vain to say, in the face of the testimony in this record, that a careful driver, on the lookout, could not see a gang of mules on a level, where there was no curve in the road, and stop the train in time, although it was running at the rate of thirty miles an hour." If there is any difference the case presented in this record is stronger than the one presented by that, for the improvement made in railway appliances since 1867 enables an engine driver to stop a train in 120 feet instead of 150 to 175 yards. If the rule announced in that case is the settled law of this State, this judgment must be affirmed. That case was cited in I. C. R. R. Co. v. Baker, 47 Ill. 295, and this language used: "If, by the use of ordinary care and diligence, animals on a railroad track can be saved from injury, it is the duty of the railroad company to use that degree of care. If they do not, they are liable." Again in R. R. I. & St. L. R. R. Co. v. Lewis, 58 Ill. 51, the court in referring to the Middlesworth case says: "It was there held that if the employes of the company could, by the use of ordinary prudence, see, or, seeing stock on the road, could without danger stop the train and avoid striking the animals, they are required to do so." To the same effect is T. P. & W. R. R. Co. v. Ingraham, 58 Ill. 120. In R. R. I. & St. L. R. R. v. Rafferty, the court quotes with approval the language of the court in I. C. R. R. v. Baker, *supra*, and also cites the Middlesworth case. The doctrine was re-affirmed again in G. C. & S. R. R. Co. v. Spencer, 76 Ill. 192, though in this case the judgment was reversed on account of an erroneous instruction. This court, not, however, as it is at present constituted, in Sherman v. I. & St. L. R. R. Co., 11 Ill. App. 472, after citing the Middlesworth case, say: "Since this case it has been the settled law of this State, and constantly followed, that a railway company in running its trains, is liable for stock killed, which results from a want of

ordinary care and diligence." So far as counsel has examined he has been unable to find any conflict in the authorities in this State upon this point. It may therefore be safely accepted as the settled law in this State, and that must control this case, notwithstanding the Mississippi case cited by counsel for appellant.

PLEASANTS, P. J. Appellee's mare was struck by an excursion train of appellant running from Beardstown to Virginia, and so injured that she had to be killed, for which he recovered judgment on a verdict for $946.66.

It is conceded that as soon as the engineer saw her he proceeded to use all the means in his power to stop the train and avoid the injury; but the charge, and the only charge of negligence on his part, was his failure to see her soon enough.

The accident occurred at a late hour of an uncommonly bright moonlight night in April, 1888. The track was level and straight for half a mile east of where it occurred, except a slight curve to the south near that point, and the view unobstructed. The right of way along there was thirty feet in width and properly fenced. From the tracks made by them it appeared that the mare in question and another came onto the right of way through a gate at a farm crossing, jumped a cattle guard and fed along the railroad, west, about 150 yards, where they turned and ran back along the south side of the track about half the way to the cattle guard, when they got upon the track and kept on it until they reached the cattle guard. The other jumped it, but the mare in question failed in the attempt, got her legs caught in the bars, and was there overtaken and struck by the train.

The evidence tended to show that the horses could be easily seen on that night at the distance of a quarter of a mile.

The defense rested on the testimony of the engineer, who stated that he first saw them about one hundred and twenty feet from the crossing on the south side of the track and nearly opposite him; that they ran up on the track just before they got to the crossing—right close to it; that immediately on seeing them he proceeded to apply all the means in his power to stop the train; that it was then running about twenty-two

miles an hour, and that he stopped it within about one hundred and twenty feet. He further testified that the horses were in a ditch four feet deep alongside the track, and that there were three trees just outside the fence, whose branches overhung the right of way, and also stated the effect of the headlight on such a night. Plaintiff testified that where the horses turned back there was no ditch at all, and with two other witnesses, that nowhere between that point and the crossing was it more than a foot and a half in depth, and that there were no such trees as the engineer mentioned. Aside from these contradictions, his relation to the case, as the person charged with negligence, and his testimony, on its face, were proper to be considered by the jury in determining the credit or weight due to his statements.

It was for them to find upon this evidence, under proper instructions as to the law, whether his failure to see the horses sooner was or was not due to a want of ordinary care on his part, and whether or not the injury to plaintiff's property was caused by it.

Appellant complains that the court refused an instruction that " when a railroad is properly fenced, an engineer running a train thereon has a right to presume that he will find a clear track, except at public highway crossings, and in villages, towns and cities, and is not bound  *  *  *  to keep on the lookout for animals trespassing on the right of way elsewhere."

As affecting passengers on railroad trains, we think this would be a very dangerous rule, and even as against the owners of animals so trespassing, unjust and unreasonable. The court did instruct, however, that " if the mare, under all the circumstances, was not reasonably to have been expected to be on the right of way at the time in question, the engineer would not be required to use vigilance that would be required of him, if, under the circumstances, he should reasonably have expected the mare to be on the track; but the engineer would be required to exercise only such care to discover the mare on the track in time to avoid injury, as a reasonably prudent person would do under all the circumstances of the entire case."

No doubt this was intended and understood to apply to the fact that the road was properly fenced. That fact, of itself, might have the effect to make a lesser degree of care reasonable than otherwise would be so. But it was also proper, though not specifically suggested by an instruction given, to consider whether, in connection with others, it might not have called for the exercise of as much care as if there had been no fence. If horses should happen, as they might, contrary to the reasonable expectation in such cases, to be on a fenced highway only thirty feet in width, with a rushing train and glaring headlight behind them and a cattle guard in front, the danger of collision and injury to persons and property would be greater than it would if there were no fence. The jury may have well thought this would have occurred to and influenced the conduct of an ordinarily careful engineer, and considering the facilities for observation shown, in the character of the night and of the ground, and the fact that the animals were on the side of the track most exposed to his view, concluded that his failure to observe them sooner was very culpable negligence.

It is also complained that the court refused an instruction that if the jury should find from the evidence that the engineer " did not see the animal * * * until it appeared on the track in front of his engine, and that if he then used all reasonable effort to stop his train and prevent injury to the animal, the verdict should be for the defendant."

This was rightly refused because the only evidence on the point was that of the engineer himself, that he did see the animal before it appeared on the track, and because the negligence charged preceded the reasonable effort mentioned, if not the actual sight of the animal.

An instruction was given on behalf of plaintiff, that if the engineer, by the exercise of ordinary care, skill and prudence could have seen the mare in time to stop the train and avoid the injury, and failed to do so, it was negligence that would render the defendant liable. Counsel insist that this is not the law; that "an engineer is not bound to stop his train as soon as he sees animals on the right of way, but only when he is satisfied that they are in danger."

If the instruction asserts or fairly implies what counsel assumes it does, then as a general proposition it was in that respect not strictly accurate.  Nor is the statement of counsel.  The law does not make the engineer's actual satisfaction as to the existence of danger the criterion or condition of his duty. But we think that as applied to this case this instruction could not have misled the jury or prejudiced the defendant.  The engineer was satisfied that there was danger, and that proper means of averting it included the stopping of the train; and the conditions making it proper were substantially the same when a stop in time to avert it was possible, as when the engineer first saw the animals.  We think the instruction fairly implies, as a part of the hypothesis, that proper care required the stopping of the train, and that the jury must have so understood it.  Counsel for appellant, with more time for deliberation, used language in the same way, with the same implication, as in the statement quoted, that "an engineer is not bound to stop his train as soon as he sees animals on the right of way, but only when he is satisfied that they are in danger."  The danger to which counsel here refer, we presume, is the danger arising from a failure to stop; for certainly an engineer is not bound to stop in the case stated if whistling reasonably appeared to be sufficient to avert it.  So also in the instruction refused, that if the engineer, on seeing the animals on the track in front of his engine, " used all reasonable effort to stop his train and prevent injury," etc.  An engineer is not bound, even in that case, to use any effort to stop unless that is the means or among the means required by proper care to prevent injury.  In both these instances we think that was fairly implied in these statements.  We do not use them as an argument *ad honimem*, but as illustrating and justifying the view we take of the instruction complained of.  T., P. & W. Ry. Co. v. Bray, 57 Ill. 515.

It is said the court erred in admitting evidence of the condition of the gate through which the animals got on the right of way, and of the cattle guard, and of "reputation" or report as to horses by which the mare was sired and in foal.

The condition of the gate was pertinent to the question of

contributory negligence on the part of the plaintiff. We understand that imputation of such negligence was afterward disclaimed by the defendant, but the evidence was proper when offered. That relating to the cattle guard was not relevant to any issue before the jury. Still, we see no reason to suppose it could have affected the finding ; when objected to counsel stated that the purpose was to show, not that the guard was defective and thus, possibly, to prejudice the defendant, but that the mare might have got out of it if she had not been pressed by the train. By the evidence and instructions the case was put to the jury solely upon the failure to see the mare in time to prevent the injury.

Dr. Scales selected the mare for the plaintiff, at the sale in Kentucky, and advised him to buy her. He claimed to be a judge of fine stock and acquainted with its value about Virginia. He was a physician, killed the mare after she was injured and opened her to save the colt if possible, and it was admitted the operation was properly and skillfully performed. He estimated her market value, in foal as she was, at twelve to fifteen hundred dollars, and gave the name of the horses referred to as the reputed sires of the mare and of her foal, and said they were famous. This statement was objected to and is claimed to have been improperly admitted, on the authority of Hamilton v. W., St. L. & P. Ry. Co., 21 Mo. App. 152.

We hold that if such reputation is not competent evidence of the fact as reputed, still it is of itself an element of market value, and as such was admissible. Several other witnesses, claiming also to be acquainted with fine stock and judges of its value, estimated hers at $1,000 to $1,200, none less than $1,000. She had shown a speed of 2.34½, and was very valuable, independently of her reputed pedigree. The colt could not be saved. On the whole case we think the judgment should be affirmed.

*Judgment affirmed.*