(81 N. W. Rep. 60.)

---

E. S. KNEELAND *vs.* GREAT WESTERN ELEVATOR COMPANY.

Opinion filed November 11, 1899.

**Sales—Delivery—Insufficient Amount—Evidence—Hearsay—Review—Preju dicial Error.**

> Plaintiff sues to recover, in addition to other damages, damages for an alleged underdelivery of flax. At the trial the jury were to

determine from the evidence how much flax was actually delivered to plaintiff on the cars. The plaintiff saw some of the flax weighed into the cars, but not all of it. Plaintiff was a witness, and on cross-examination stated in figures the exact amount, in net bushels, of flax which was delivered, and then admitted that he predicated this statement upon the amount of the pay for the flax which was remitted to him by his agent at Duluth, who sold the flax. The statement that he was paid for a certain net amount in bushels was frequently repeated by the witness. Counsel for defendant moved to strike out this evidence as hearsay. The motion was denied. *Held*, that the ruling was prejudicial error.

### Instruction to Disregard Evidence—Error Not Cured.

During the trial, and the next day after said motion was denied, the plaintiff's counsel requested the court to instruct the jury to disregard all of plaintiff's testimony as to the gross amount or actual amount of flax delivered to plaintiff in the cars. The trial court, referring in terms only to the gross amount put in the cars, directed the jury to disregard the testimony of the plaintiff as to the same. But neither the plaintiff's counsel nor the court attempted to withdraw from the jury the evidence of the plaintiff as to the amount of flax for which he received pay from his agent. *Held*, that the obnoxious evidence was not all withdrawn, and hence such withdrawal as was made failed to cure the error involved in the admission of the hearsay evidence.

Appeal from District Court, Traill County; *Pollock,* J.

Action by E. S. Kneeland against the Great Western Elevator Company for insufficient delivery of flax sold. From a judgment in favor of plaintiff, defendant appeals.

Reversed.

*Cochrane & Corliss,* for appellant.

*Carmody & Leslie,* for respondent.

WALLIN, J. The trial of this action resulted in a verdict for the plaintiff. A motion for a new trial was made upon the ground of errors of law occurring at the trial, and the insufficiency of the evidence to justify the verdict. A new trial being denied, judgment was entered in favor of the plaintiff, and the defendant has appealed to this court from such judgment.

The facts, briefly stated, upon which the action is based, are as follows: The defendant issued from its elevator located at Blanchard, N. D., certain elevator tickets, calling for 1,218 bushels of flax, and 930 bushels of wheat, of the grade denominated "No. 1 Northern." In October, 1895, the plaintiff, who held said tickets, presented the same to the defendant's agent at its elevator at Blanchard, and demanded the grain called for by the tickets. Pursuant to such demand the defendant then and there delivered to the plaintiff, on the cars, a quantity of wheat and flax. Plaintiff claims, and this is the gist of his grievance: First, that defendant did not deliver to plaintiff the full amount of the flax called for by the tickets, within 89 bushels and 30 pounds; and, second, that the defendant failed to deliver plaintiff any wheat of the grade stated in the tickets, but did deliver plaintiff No. 2 wheat instead of No.

Northern. Plaintiff claims damages on account of the alleged reduced grade of the wheat in the sum of 2 cents a bushel, and, on account of the flax alleged to be not delivered, the sum of 85 cents per bushel.

The decisive questions of fact for the jury to determine were: First, whether the wheat placed on the cars was No. 1 Northern or No. 2 wheat; second, whether the defendant delivered on the cars the amount of flax called for by the tickets, or a less amount. Plaintiff was a witness in his own behalf, and with respect to these issues of fact, testified, in substance, that he was present when a part of the flax was weighed into the cars, and saw all of one car delivered, and part of both,—saw all of one car weighed in; that he took the agent's word as to what was weighed into the car he did not see. The witness stated: "I knew how many bushels were delivered into both cars. In the two together, I believe it was 1,128 bushels and 30 pounds. The agent claimed to have delivered 1,218 bushels, net. I cannot give the gross weight." Counsel for defendant was permitted to examine the witness with a view to expose the fact that his testimony was improper and hearsay, and, while doing so, asked the following question: "Q. How did you arrive at the amount of the flax as being 1,128 bushels and 30 pounds at that time?" To this question the witness answered: "That was the amount I was paid for." Defendant moved to strike out this answer as "incompetent, hearsay, and not the best evidence." This motion was overruled, and an exception was taken to the ruling. The witness further testified: "I do not know now the gross weight of the stuff that was loaded into either of these cars at Blanchard on the 16th day of October, 1896, neither the net weight." The witness further said, referring to a former trial of the action: "If I testified on the other trial I only saw part of one car weighed, I presume that was right. I took the agent's word for one, and I saw the other weighed." The witness was asked as follows: "Your testimony as to the number of bushels delivered to you—1,128—is not based on the weight actually given to you at that time?" The witness answered: "No, sir. Q. That is predicated on the reports made to you from the selling agent? A. That is the amount I got pay for. Q. And it is on that you predicate your testimony as to the 1,128 bushels and 30 pounds? A. That was the amount I was paid for. Q. That is what you predicate your testimony on as to the amount of flax you got? A. Yes; that was the amount I was paid for. Q. And the amount you were paid for is the basis of your testimony as to the amount of flax you received? A. Well, I believe so; something of that kind." This witness further testified that he did not go to Duluth, where the grain was marketed. He got his returns two or three weeks after the shipment. He was paid by draft or check transmitted through the mails to certain banks. After this testimony was elicited on cross-examination, counsel for defendant moved to strike out all the testimony of the witness as to the amount of flax in

the two cars, on the ground that the same was incompetent and hearsay. This motion was denied, and an exception was saved to such ruling. It should be further stated that the defendant received into one of the two cars in question, in addition to the flax placed therein by the defendant, 109 bushels and 40 pounds of flax, which flax was delivered to plaintiff by another concern, viz: the Northwestern Elevator Company.

When the evidence was closed, the trial court, while instructing the jury, used the following language: "During the introduction of the testimony on the part of the plaintiff, the plaintiff gave some evidence with reference to the gross number of pounds of flax which were in the cars. At the opening of the trial to-day, the plaintiff expressly withdrew those statements, if any he made, from the jury. The plaintiff, as the court understands it, does not claim to have any personal knowledge of the exact number of pounds of flax which was shipped out, and any knowledge which he may have is hearsay, which testimony could not be allowed, under the rules of evidence; and the court now warns you to disregard any statements made by the plaintiff with reference to the gross number of pounds of flax which were delivered to him in the cars, as described in his testimony."

The defendant's counsel has assigned the several rulings to which we have made reference as error; and counsel contend that the prejudicial effect of the evidence in question was not cured by the trial court, when, at the close of the trial, the jury were instructed to disregard the evidence of the plaintiff as to the gross number of pounds of flax which were delivered to him on the cars. That the evidence of the plaintiff as to either the gross or net number of bushels of flax delivered on the cars is mere hearsay is conceded by counsel, and is, moreover, obviously true. The plaintiff did not weigh or measure the grain personally, nor did he see all of it weighed, when put on the cars, or at any time. Being pressed, he admitted that he predicated his repeated declarations as to the exact number of bushels of flax delivered to him upon the remittances made to him by the Duluth parties who sold the grain for him. This testimony demonstrates that plaintiff was not in a position to testify upon this decisive point in the case as of his own knowledge, and that all his information came secondhand, and was pure hearsay. The inadmissible character of this evidence was made to appear by a preliminary cross-examination made by defendant's counsel with the avowed object of showing that it was inadmissible; and, after its character as hearsay evidence was clearly developed, counsel moved to strike the same from record as hearsay. This motion was denied. That such ruling was error is too clear for discussion. It violated the rule of evidence which excludes hearsay. Nor can there be any doubt, in our judgment, that the evidence was of a strongly prejudicial character. The testimony related to the most important question of fact in the case, namely, as to the exact quantity of flax actually put in the cars at Blanchard. The

plaintiff owned the flax, and was present and saw a part of it weighed. He also sold the flax, and received remittances, which he testified were the proceeds of the sale. Under the circumstances, a jury of laymen would, in our judgment, be strongly impressed and influenced by plaintiff's oft-repeated declaration as a witness that he received from defendant 1,128 bushels and 30 pounds of flax, net weight, and no more. The importance of firmly maintaining the well-approved rules of evidence is forcibly put in the case of *Queen* v. *Hepburn,* 7 Cranch, 290, 3 L. Ed. 348. In the course of the opinion of the court in that case, Chief Justice Marshall, who formulated the opinion, uses this language: "It was very justly observed by a great judge that 'all questions upon the rules of evidence are of vast importance to all orders and degrees of men. Our lives, our liberty, and our property are all concerned in the support of these rules which have been matured by the wisdom of ages, and are now revered from their antiquity and the good sense in which they are founded.'" The chief justice further said: "One of these rules is that hearsay evidence is in its own nature inadmissible. That this species of testimony supposes some better testimony which might be adduced in the particular case is not the sole ground of its exclusion. Its intrinsic weakness, its incompetency to satisfy the mind of the existence of the fact, and the frauds which might be practiced under its cover, combine to support the rule that hearsay evidence is totally inadmissible." Of course, there are numerous exceptions to this rule; but, as this case does not fall within any of the exceptions, they need not be noticed here. Perhaps the controlling ground upon which hearsay is excluded is the fact that it comes from parties who are not sworn as witnesses, and hence such testimony is mere unsworn statements coming before the court from persons who are not witnesses, and hence could not be cross-examined. The evil of allowing such evidence to go before a jury is well illustrated in this case. The plaintiff, as a witness, repeatedly stated that the defendant delivered just exactly 1,128 bushels and 30 pounds of flax in the cars at Blanchard. Under cross-examination it was demonstrated that the plaintiff did not and could not know of his own knowledge how much flax was delivered. The witness, it appears, was basing his statements upon the reports made to him of sales made by his agents at Duluth. But such reports came through banks, and were not, therefore, made directly to the witness; hence, the witness obtained his information, not only by hearsay, but hearsay at secondhand. The information came from parties who were not sworn, and hence could not be cross-examined to ascertain how much flax was actually sold, what price was received for the same, how much was deducted as commission by the agent, and, finally, how much of the proceeds of the flax which belonged to the plaintiff were actually remitted to him. The cases cited below arose upon states of fact which are similar and analogous to those of this case, and are, in our judgment, authority directly in point. *Olive* v.

*Hester,* 63 Tex. 190; *Hoskins* v. *Railway Co.,* 19 Mo. App. 315; *Barrett* v. *Wheeler,* 71 Iowa, 662, 33 N. W. Rep. 230. As we have said, the evidence under consideration was not merely inadmissible, but was, in our view, strongly prejudicial to the defendant.

But counsel for respondent, while conceding that this evidence was improperly admitted, insist that it could not prejudice the defendant, because, as counsel claim, it was withdrawn by the plaintiff's counsel, and the trial court, at counsel's request, directed the jury to disregard the same in their deliberations upon the evidence. But an attentive reading of the record discloses the fact that all of the obnoxious evidence of the plaintiff was not withdrawn by plaintiff's counsel, nor were the jury instructed by the trial court to disregard all of such evidence. As to the plaintiff's withdrawal of such evidence, the record is as follows: "The plaintiff consents that the court shall instruct the jury to disregard any evidence which may have been given by the plaintiff as to the gross number of pounds, or the actual number of pounds, of flax delivered to him by the defendant's agent, and consents that the same may be stricken from the record." Returning to the instructions of the court upon this matter, we discover that such instructions have reference particularly to the testimony of plaintiff as to the gross number of pounds of flax delivered on the cars, and no mention is made by the court in terms, of plaintiff's repeated statements as a witness (giving the figures) of the net amount of flax delivered on the cars. Another fact of prime importance in this connection is that plaintiff's counsel did not withdraw from the jury, or consent to strike out, plaintiff's evidence as to the amount of flax for which he was paid. Nor did the trial court warn the jury to disregard this highly-important feature of the plaintiff's testimony. It therefore appears that only a portion of the mischievous testimony was taken away from the jury. That portion which was left with the jury bore upon a vital question of fact, *i. e.* the net amount of flax delivered on the cars. As we have seen, the plaintiff was repeatedly allowed to testify, in terms, as to the amount of the net delivery. The witness repeatedly gave the exact net figures. To bolster this, the witness was permitted against objection to state that such net amount was the amount for which he received pay, and, as we have seen, these features of the evidence were left with the jury for consideration. It follows that the case before us does not call for a ruling upon the general question which arises in a case where all of the evidence improperly admitted is further withdrawn from the case by counsel and such withdrawal is followed by a direction of the court to disregard the same and the whole thereof. As to the effect of receiving illegal evidence, the Court of Appeals of New York, in *Anderson* v. *Railroad Co.,* 54 N. Y. 334, says: "The reception of illegal evidence is presumptively injurious to the party objecting to its admission; but where such presumption is refuted, and it is clear beyond rational doubt that no harm was done to the party objecting, and that the illegal evidence did not and could not affect the result, the error furn-

ishes no ground for reversal." In the same case the court uses this language: "Evidence cannot be said to be entirely harmless when the party objecting to it is obliged to call a witness to explain or contradict it." In the case at bar the evidence of the plaintiff as to the net amount of flax delivered was vitally important, and unless overthrown, would have a decisive influence upon the jury. Its effect could not be overcome without calling other witnesses to disprove the plaintiff's statements. As we have already said, the facts of the case do not require a ruling upon the question of the effect of the withdrawal of certain illegal evidence. Only a part of the hearsay evidence was withdrawn, or referred to in the instruction of the court to the jury which we have quoted. After such withdrawal, much hearsay evidence that was highly prejudicial was permitted to remain with the jury. For this error the judgment must be reversed, and a new trial granted. All the judges concurring.